WELCH, J.
iJn this acrimonious divorce and child custody proceeding, Frances Jean Crow Givens appeals a trial court judgment and its incorporated joint custody plan insofar as it allocates Kenneth Blake Givens periods of overnight physical custody[1] with the minor child. Finding no error in the judgment of the trial court, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Frances Givens and Kenneth Givens were married on August 4, 1979. During their marriage, they had two children: Victoria Brighten Givens, who was born on June 24, 1987 (and is now a major), and Olivia Rose Givens, who was born on July 24,1997. During the marriage, they resided in Terrebonne Parish. On March 23, 2007, Frances Givens filed a petition for divorce based on La. C.C. art. 103(2), alleging Kenneth Givens had committed adultery. In her petition, she also requested that she be awarded sole custody of the minor child, Olivia. Kenneth Givens admitted the allegations of adultery in his answer to the petition. However, he denied that Frances Givens should be award *724 ed sole custody of Olivia, and asserted that the parties were entitled to joint custody and that he should be designated as the domiciliary parent. Kenneth Givens subsequently amended his answer, maintaining that the parties should be awarded joint custody of the child, but asserting that Frances Givens should be designated as the child’s domiciliary parent, subject to liberal and generous physical custodial periods with the child in his favor. Shortly after Frances Givens filed her petition for divorce, she moved with the minor child to New Orleans, Louisiana (without notice to Kenneth Givens) into the home of her sister and brother-in-law, both of whom are attorneys |3and are representing her in this matter.
A trial on the issue of custody initially commenced on July 5, 2007; however, the matter was not completed on that date. On that date, the majority of the testimony and evidence concerned specific details regarding Kenneth Givens’ use of the internet on the family computer to access pornographic websites (some of which suggested inappropriate sexual proclivities), and sexually explicit communications and photographs exchanged between Kenneth Givens and Barbara Crosby, the person with whom he had an adulterous affair. Pending completion of the trial, Kenneth Givens was granted visitation one day every weekend from 9 a.m. until 9 p.m. Additionally, following that hearing (and by a previous joint agreement of the parties), a psychological evaluation of the parties was performed by John C. Simoneaux, Ph.D.[2] Also, a psychiatric evaluation of Kenneth Givens, for the purpose of determining the presence of any psychiatric dysfunction, was conducted by Frances Givens’ expert, Harold M. Ginzberg, M.D., J.D., M.P.H.
The parties were eventually divorced,[3] and thereafter, Kenneth Givens married Barbara Crosby (hereinafter “Barbara Givens”) and moved from Terrebonne Parish to her residence in Wesson, Mississippi. Numerous disputes between the parties over various issues arose, all of which required court appearances and resolution by the trial court. Pertinent to this appeal, Frances Givens made a request to inspect and photograph Barbara Givens’ residence in Mississippi. Kenneth Givens objected to this request, and in response, Frances Givens requested Kenneth Givens’ request for “liberal and generous” (or overnight) custodial time be stricken based on his refusal to allow the inspection. The trial court denied both Frances Givens’ request to inspect and photograph 14 Bar bar a Givens’ residence and her motion to strike.
The remainder of the custody trial was eventually held on June 1, 2, and 3, 2009. At the conclusion of trial, the trial court took the matter under advisement. On July 24, 2009, the trial court rendered and signed a judgment awarding Frances Givens and Kenneth Givens joint custody of the minor child, Olivia, subject to a joint custody plan attached to and made part of the judgment. The judgment also designated Frances Givens as the domiciliary parent of the child, subject to Kenneth Givens’ right to physical custodial time, without restriction, in accordance with the attached joint custody plan. The attached joint custody plan allocated physical custodial periods to Kenneth Givens: every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., commencing Friday, July 31, 2009; on specific holidays, with *725 the holidays each party was entitled to alternating on a yearly basis; and for four weeks during the school summer vacation. Following the rendition of judgment, on August 25, 2009, the trial court issued extensive findings of fact and written reasons for judgment.
Frances Givens has appealed the July 24, 2009 judgment of the trial court, asserting that the trial court erred in awarding Kenneth Givens overnight periods of physical custody.[4] Specifically, she argues that the trial court erred in denying her the right to inspect Barbara Givens’ home in Mississippi and in denying her motion requesting that Kenneth Givens’ request for overnight visitation be stricken. She also argues that the trial court erred in: rejecting the testimony of two experts, Dr. Ginzberg and Dr. Simoneaux; relying on the testimony of Dorothy Day, a Licensed Marriage and Family Therapist, whom the trial court accepted as an expert in marital and family counseling; accepting the testimony of Barbara Givens; and “[ajpplying incorrect principles of law, which errors were prejudicial to [Frances |fiGivens], and otherwise making clearly erroneous findings of fact that [were] not supported in the record.”
LAW AND DISCUSSION

General Precepts Concerning Child Custody

Each child custody case must be viewed in light of its own particular set of facts and circumstances. Perry v. Monistere, 2008-1629, p. 3 (La.App. 1st Cir.12/23/08), 4 So.3d 850, 852. Louisiana Civil Code article 131 provides “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.” Thus, the paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577, p. 12 (La.2/6/98), 708 So.2d 731, 738. In determining the best interest of the child, La. C.C. art. 134 provides:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
|fi(10) The willingness and ability of each party to facilitate and encourage a *726 close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in this article is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b). Additionally, the “best interest of the child” test under La. C.C. arts. 131 and 134 is a fact-intensive inquiry, requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Martello v. Martello, 2006-0594, p. 5 (La.App. 1st Cir.3/23/07), 960 So.2d 186, 191. Hence, every child custody case is to be viewed on its own particular set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Id.
The trial court is vested with broad discretion in deciding child custody cases. Because of the trial court’s better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. Thus, a trial court’s determination regarding child custody will not be disturbed absent a clear abuse of discretion. Martello, 2006-0594 at p. 5, 960 So.2d at 191-92.

Frances Givens’ Request to Inspect the Home of Barbara Givens and Request to Strike Kenneth Givens’ Request for Overnight Visitation

In February 2009, Frances Givens filed a request pursuant to La. C.C.P. art. 1461 that Kenneth Givens make available to Frances Givens for inspection and photographing “the residence of [Kenneth Givens’] ‘new family ” in Mississippi, on the basis that the residence was a “proposed and potential custodial placement” [ 7for the minor child. Kenneth Givens objected to the request on the basis that: the premises were not owned by him, but rather by Barbara Givens; that Barbara Givens was not voluntarily going to allow the inspection and photographing of her home because it was a violation of her right to privacy; and he believed that the request was solely to harass Kenneth and Barbara Givens. Frances Givens filed a motion to compel the inspection and a motion to strike Kenneth Givens’ request for overnight or “generous” and “liberal” custodial time based on his refusal to allow the inspection. The trial court denied both motions, and on appeal, Frances Givens asserts that this was error.
Louisiana Code of Civil Procedure article 1461 provides, in pertinent part:
Any party may serve on any other party a request ... to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of [discovery],
The general scope of discovery is that “[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.” La. C.C.P. art. 1422. It is well established that the trial court has broad discretion with regard to discovery matters and its decision on such matters will not be disturbed on appeal absent a clear abuse of that discretion. Moak v. Illinois Central Railroad Compa *727 ny, 93-0783 (La.1/14/94), 631 So.2d 401, 406.
In denying the motion to compel the inspection, the trial court stated:
I don’t know anybody that’s [sic] got any right to go in and take any photographs or visit anybody’s else’s house, especially when they’ve got other people living in that house with other children and people who aren’t part of this proceeding. So I’m not going to compel anybody to make their home or somebody else’s home or the place where they’re going to stay available for inspection to anybody else, period.
If Olivia visits there at some point, and she tells [Frances] Givens that she doesn’t like it because it’s uninhabitable in some fashion, you can |scome back and complain about it. But I’m not going to put anybody with photographers and lawyers in somebody else’s house. Some things [are] just not that important.
Based on the trial court’s ruling, it appears that the trial court concluded that Frances Givens did not have the right to inspect the residence of Barbara Givens because she was not a party to the proceeding and because the request to inspect and photograph the home was not important to the determination of what was in Olivia’s best interest. Notably, the trial court did not rule on whether the request for inspection was being interposed to harass Kenneth or Barbara Givens.
With regard to whether Frances Givens even had the right to inspect the home of Barbara Givens (or Kenneth Givens), we have not found, nor have we been directed to, any case in the context of a custody proceedings where one parent has requested or been granted the right to inspect and photograph the other parent’s home. However, we recognize that the paramount consideration in all child custody cases is the best interest of the child, and further, that the capacity to provide the child with material needs and the permanence, as a family unit, of the proposed custodial home are two of the factors to be considered in determining the best interest of the child. See La. C.C. arts. 131 and 134(3) and (5). As such, any evidence concerning the proposed custodial home of the parent could be relevant, and therefore, subject to discovery by any available method (provided that the discovery sought is not being interposed for some improper purpose, such as to harass the other party).
Nevertheless, in this case, absent some allegation that the proposed custodial home of Kenneth Givens (and Barbara Givens) was uninhabitable, unsuitable, or otherwise unacceptable, and in light of the fact that the capacity to provide the child with material needs and the permanence of the proposed custodial home are only two of many relevant factors to be considered by the trial court in determining the best interest of the child, we do not find that the trial court abused its discretion | ¡,in refusing to compel the inspection and photographing of Barbara and Kenneth Givens’ home by Frances Givens. Additionally, we do not find that the trial court abused its discretion in its subsequent ruling denying Frances Givens’ motion in limine,[5]

*728
Physical Custody Allocation

When parents share joint custody of children, La. R.S. 9:335 requires an implementation order to be rendered (except for good cause shown), which allocates each party’s physical custodial time periods, as well as the legal authority and responsibility of the parents. Louisiana Revised Statutes 9:335(A)(2)(a) and (b) requires frequent and continuing contact with both parents, and to the extent that it is feasible and in the best interest of the children, that physical custody of the children be shared equally.[6] The trial court is imbued with much discretion in the determination of what constitutes feasible, reasonable time periods of physical custody of the children. Caro v. Caro, 95-0173, p. 4 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 519.
As previously noted, the trial court allocated Kenneth Givens physical custodial time with Olivia, without restriction, every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., on certain holidays, and for four weeks during the summer. Frances Givens asserts that this physical custody allocation was not ¡ ipin Olivia’s best interest.[7] Additionally Frances Givens contends that when formulating the joint custody plan (or physical custody allocation), the trial court erroneously: rejected the testimony of Dr. Ginzberg and Dr. Simoneaux; relied on the testimony of Dorothy Day; and accepted the testimony of Barbara Givens.[8]
In this case, and as in most child custody cases, the trial court’s determination as to what was in the best interest of Olivia was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Stobart v. State, DOTD, 617 So.2d 880, 882-83 (La.1993). Thus, when the fact finder is presented with two permissible views of the evidence, the fact finder’s choice between them cannot be *729 manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Additionally, where the factfinder’s conclusions are based on determinations regarding the credibility of a witness, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the |, variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, 549 So.2d at 844.
Furthermore, the trial court is not required to give any extra credence to the testimony of experts. Harris v. State ex rel. Dept. of Transp. and Development, 2007-1566, p. 25 (La.App. 1st Cir.11/10/08), 997 So.2d 849, 866, unit denied, 2008-2886 (La.2/6/09), 999 So.2d 785. It is well settled in Louisiana that the fact finder is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Id. The fact finder may accept or reject in whole or in part the opinion expressed by an expert. Id. The effect and weight to be given expert testimony is within the trial court’s broad discretion. Morgan v. State Farm Fire and Cas. Co., Inc., 2007-0334, p. 8 (La. App. 1st Cir.11/2/07), 978 So.2d 941, 946.
This court has carefully reviewed the arguments presented in this appeal, carefully examined the entire record, and studied the trial court’s written factual findings and reasons for judgment. The factual findings and credibility evaluations expressed by the trial court in the written reasons for judgment are reasonable, and are fully supported by the documentary and testimonial evidence in the record. Therefore, we find no manifest error in its factual finding that overnight physical custodial time with Kenneth Givens was in Olivia’s best interest.
As the trial court noted in its reasons for judgment, the overwhelming evidence at trial established that, prior to the separation of the parties, Kenneth Givens and Olivia had a good relationship, Kenneth Givens was a competent father, he was actively involved with her upbringing, and he was capable of providing Olivia with all of her needs. The testimony of Kenneth Givens, Frances Givens, and Debra Fortier (Frances Givens’ best friend) supports the trial court’s conclusions in this regard. Additionally, while the custody proceedings were pending (and prior to the rendition of judgment by the trial court), Kenneth Givens | i2visited Olivia every weekend, without incident, although, in accordance with Frances Givens’ demand, his visitation or custodial time with Olivia has not been overnight.
As previously mentioned, the majority of the evidence at trial pertained to Kenneth Givens’ activity on pornographic internet websites, the sexually explicit communications, through the internet, between him and Barbara Givens, and their subsequent use of the internet to exchange lewd photographs of parts of their bodies. All of this activity occurred when Kenneth Givens was still living in the family home with Frances Givens and Olivia, and both Frances Givens and Olivia were unaware of Kenneth Givens’ activity in this regard. In fact, the evidence established that Kenneth Givens’ activity on the internet was discovered solely through the cloning and examination of the family computer by two computer experts.
In a child custody proceeding, any purported moral misconduct should be considered by the trial court only if it has a detrimental effect on the child, and not to regulate the moral behavior of the parents. Griffith v. Latiolais, 2010-0754, p. 12 (La.10/19/10), 48 So.3d 1058, 1071. The trial court specifically stated in its reasons for judgment that it had carefully considered the best interest of Olivia in light of *730 the pornographic internet activity of Kenneth Givens. The trial court found, citing the opinion testimony of Dr. Simoneaux, that there was no evidence to suggest that Mr. Givens was interested in pre-pubertal children or child pornography and that Frances Givens’ complaints about Kenneth Givens’ internet activities were not as “consequential” as Frances Givens believed. The trial court further found that there was no evidence in the record suggesting that Kenneth Givens had ever, in any way, acted inappropriately with his two daughters.
With regard to the pictures exchanged between Kenneth Givens and Barbara Givens, the trial court noted that their actions had been forthrightly admitted by | isthem to be impulsive, juvenile acts, and that neither Kenneth Givens nor Barbara Givens were proud of their behavior in this regard. However, the trial court found that them behavior was not evidence that either Barbara or Kenneth Givens posed any danger to Olivia or that they possessed any serious character defect that would result in physical, mental or emotional harm to her.
The trial court also found that Frances Givens’ concerns about Kenneth Givens’ overnight physical custodial periods with Olivia were “unreasonable, flimsy excuses” for making his custodial time with Olivia more difficult and that there was no reasonable basis for concern about Olivia’s welfare and well-being while in the care and control of her father. Based on the evidence, the trial court concluded that Frances Givens was more concerned that Olivia, while in the care of Kenneth Givens, might be denied the more perceived benefits and opportunities offered by the area of New Orleans (where Frances Givens and her family live) and preferred that Olivia not be subjected to the small town experiences of Wesson, Mississippi.
Frances Givens argues on appeal that in making this finding, the trial court was mocking her and playing on “big town-small town regionalism” to trivialize her concerns and overlook the more important issue of whether overnight custodial time with Kenneth Givens was in Olivia’s best interest. We do not read the trial court’s recitation of her concerns as a mockery of Frances Givens or an attempt to play on “big town-small town regionalism,” but rather, as a fairly accurate summary of Frances Givens’ testimony. At trial, Frances Givens specifically testified that she objected to Kenneth Givens having overnight physical custodial time with Olivia because: Kenneth Givens sends text messages while driving; Kenneth Givens provides insufficient supervision of Olivia; Olivia has no place to play in Wesson, Mississippi; Olivia has no children to play with in Wesson, Mississippi; Barbara Givens allows her son to socialize with older boys; Barbara [14Givens allows transient people (or people that Frances Givens does not know) in her home; there is a bar near Kenneth and Barbara Givens’ office; the town of Wesson is small;[9] Olivia has to sleep on a mattress on the floor when they stay at the office; and the sports and medical facilities in Wesson, Mississippi are inadequate. Frances Givens’ allegations in this regard (other than the fact that Wesson, Mississippi is a small town), was contradicted by the testimony of Kenneth Givens, Barbara Givens, and Dorothy Day, all of whom are residents of Wesson, Mississippi.
Based on Frances Givens’ testimony, along with the testimony refuting her allegations, it is reasonable to conclude that Frances Givens’ objections to overnight *731 physical custodial time between Olivia and Kenneth Givens were not motivated by a desire to protect Olivia from any danger or avoid circumstances deleterious to her welfare while in Kenneth Givens’ care and control, but rather, to make Kenneth Givens’ physical custodial time with Olivia more onerous, so that he would chose to keep Olivia in the New Orleans area— close to Frances Givens — rather than taking Olivia to Wesson, Mississippi, during his physical custodial time. This conclusion is further supported by Frances Givens’ specific statement that she had no problem with Kenneth Givens having physical custodial time, as long as the physical custodial time was not overnight. Thus, the trial court determined that if Francis Givens did not object to general, unsupervised, day-long physical custodial time between Kenneth Givens and his daughter, there was no reasonable basis for her to object to general, unsupervised overnight physical custodial time.
We disagree with Frances Givens’ contention that the trial court rejected the | lsentire testimony “of all of the qualified experts.” [10] Based on our review, the trial court rejected the opinion expressed by both Dr. Simoneaux and Dr. Ginzberg that overnight physical custodial periods were not in Olivia’s best interest. However, the trial court accepted and relied on other opinions expressed by Dr. Simoneaux, ie., that there was no evidence suggesting that Kenneth Givens was interested in pre-pu-bertal children or child pornography and that Frances Givens’ complaints about Kenneth Givens’ internet activities were not as “consequential” as Frances Givens believed them to be. As previously noted, the trial court was not required to give any extra credence to the expert opinion testimony, and was free to accept or reject, in whole or in part, the testimony of both Dr. Simoneaux and Dr. Ginzberg.
The trial court’s reasons for judgment reflect that it carefully considered the two expert opinions. After evaluating Dr. Ginzberg’s opinion, the trial court found that Dr. Ginzberg’s opinion regarding the best interest of Olivia was based on assumptions about Kenneth Givens that were ultimately incorrect — ie., that Kenneth Givens had refused to support both Frances Givens and Olivia. Hence, the trial court concluded that Dr. Ginzberg’s opinion that Kenneth Givens should not have overnight physical custodial time was directed more at punishing Kenneth Givens (for his alleged failure to support Frances Givens and Olivia), rather than what was in the best interest of Olivia. Because Dr. Ginzberg’s opinion was based on false assumptions, the trial court was well within its discretion to reject it.
Dr. Simoneaux testified that he believed Kenneth Givens loved Olivia and was very proud of her. Dr. Simoneaux did not consider Kenneth Givens to be a sexual predator, did not think Kenneth Givens had any sexual interest in Olivia (or in children), and saw no evidence that Kenneth Givens had been viewing child | ^pornography.
Essentially, Dr. Simoneaux opined that it was not in the best interest for Olivia to have overnight physical custodial time with her father for three reasons. The biggest concern that he had with overnight physical custodial time was the fact that Barbara Givens was “a huge unknown” because he knew “absolutely nothing” about her. Thus, he could not recommend for Olivia to go to an environment that he was not able to assess. Dr. Simoneaux’s sec *732 ond concern was the fact that Kenneth Givens had married Barbara Givens and moved to Mississippi. He considered both of those decisions to be “unconscionable.” Third, Dr. Simoneaux believed that in general, Kenneth Givens had poor judgment or insight relating to his children and virtually no judgment into how his behaviors and choices had the potential to adversely affect his child.
Although Dr. Simoneaux classified Barbara Givens as the “huge unknown,” he specifically recognized that, after meeting or evaluating Barbara Givens, it was possible that he could find her to be a positive factor in the case. Since the “unknown” Barbara Givens was the main concern expressed by Dr. Simoneaux concerning overnight custodial time, the trial court, which was able to meet and observe Barbara Givens during her testimony at trial (and thus, make the necessary credibility determinations about her), was well within its discretion to reject Dr. Simoneaux’s initial concerns on that issue and to make its own factual finding as to what the best interest of Olivia. After hearing the testimony of Barbara Givens and assessing her character, attitude, and demeanor, the trial court found exactly what Dr. Simoneaux had stated was possible — that Olivia would benefit from exposure to Barbara Givens.
Frances Givens contends, however, that the trial court erred in accepting the testimony of Barbara Givens, essentially because of Barbara Givens’ adulterous affair with Kenneth Givens, the nature of her communications with Kenneth |17Givens at the beginning of them relationship, and the explicit photographs that she sent of herself to Kenneth Givens. The trial court was obviously aware of these actions, and after listening to her testimony, determined that she was an articulate, intelligent, and rational woman. The trial court noted that Barbara Givens raised her own children and several stepchildren, and further, that she gave the court no reason to be concerned for the welfare of Olivia while in her company. Based on our review of Barbara Givens’ testimony, we find no manifest error in the trial court’s decision in this regard.
Lastly, with regard to Dorothy Day, Frances Givens claims that because she was an “unqualified family counselor who did not evaluate the child or speak to [Frances Givens],” the trial court erred in “relying on [her] testimony.” Again, we must disagree with Frances Givens’ characterization that the trial court “relied” on the testimony of Dorothy Day to support its reasons for judgment. The trial court’s reasons for judgment are approximately eight-and-a-half legal pages. The testimony of Dorothy Day was mentioned in one three-sentence paragraph, as follows:
In February, 2009, Mr. Givens sought counseling with Dorothy Day, a licensed marriage and family therapist in Mississippi. Ms. Day is satisfied that Mr. Givens is faithful to his present wife and that he no longer engages in internet pornographic activities. She visited the home where Mr. Givens and his present wife live and she described the same as “pristine”.
The trial court accepted Dorothy Day as an expert in family and marital counseling. To the extent that Frances Givens challenges this ruling on appeal, we find no abuse of the trial court’s discretion to accept Dorothy Day as an expert in this regard. Dorothy Day’s testimony established that she received a masters’ degree in marriage and family therapy from Mississippi College, that she was a Licensed Marriage and Family Therapist in the state of Mississippi, that she had been engaged in family and marriage counseling for 15 years, and that she has |isbeen accepted in the courts of Mississippi as an *733 expert in the area of family and marital counseling.
Dorothy Day testified that she was aware of what Dr. Simoneaux’s concerns were with regard to internet pornography in the home of Kenneth Givens and overnight visitations in favor of Kenneth Givens, and that Dr. Simoneaux desired to shelter Olivia from the unknown, such as Barbara Givens. Dorothy Day stated that she was fully aware of the nature Kenneth and Barbara Givens’ previous pornographic activities on the internet and their sexually uninhibited communications with each other. Dorothy Day testified that she had observed Kenneth and Barbara Givens’ current behavior, discussed with Kenneth Givens the inappropriateness of internet pornography, infidelity, and adultery, and that Kenneth Givens acknowledged to her they were inappropriate.
Dorothy Day also testified with regard to several factual issues, such as the condition of Kenneth and Barbara Givens’ home (and its amenities), the medical services and recreational opportunities available in Wesson, Mississippi, and its surrounding areas.
Although Frances Givens contends that the trial court erroneously relied on or accepted Dorothy Day’s testimony because she did not evaluate Olivia or Frances Givens and because she was friends with Barbara Givens, we note that the Dorothy Day testified at the outset that her role was counseling therapy for Kenneth and Barbara Givens with regard to the requirements set forth in Dr. Simoneaux’s report. She was not performing a custody evaluation or rendering an opinion as to the mental health of any of the parties. To the extent that Dorothy Day knew Barbara Givens prior to performing counseling services, that was simply a factor to be considered by the trial court when weighing her testimony. After reviewing the testimony of Dorothy Day in light of all of the evidence, we do not find that weight assigned to her testimony by the trial court was an abuse of its 119discretion.
Therefore, after considering all of the evidence in this matter, we do not find any manifest error in the trial court’s factual determination that overnight physical custodial time with Kenneth Givens was in Olivia’s best interest, nor do we find that the trial court abused the discretion afforded it determining the proper allocation of physical custody as set forth in the joint custody plan.
CONCLUSION
For all of the above and foregoing reasons, the July 24, 2009 judgment of the trial court and its incorporated joint custody plan are affirmed.
All costs of this appeal are assessed to the plaintiff/appellant, Frances Jean Crow Givens.
AFFIRMED.

. Frances Givens and Kenneth Givens were awarded joint custody of their minor child. However, we note that both parties and the trial court have used the term "visitation” with reference to Kenneth Givens’ custodial time. "Visitation,” as provided for in La. C.C. art. 136, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their children is more properly described as physical custody allocation of a joint custody plan, rather than as visitation. La. R.S. 9:335; Cedotal v. Cedotal, 2005-1524, p. 5 (La.App. 1st Cir. 11/4/05), 927 So.2d 433, 436; see Evans v. Lungrin, 97-0541, pp. 10-11 (La.2/6/98), 708 So.2d 731, 737.

. See La. R.S. 9:331.

. The original judgment of divorce was signed on May 23, 2008. Pursuant to La. C.C.P. art. 1951(1), an amended judgment of divorce was signed on April 17, 2009.

. No issues have been raised with regard to the trial court’s decision to award the parties joint custody of the child or insofar as it designated Frances Givens as the domiciliary parent of the child.

. We also find no merit to Frances Givens’ insinuation in her brief that Kenneth and Barbara Givens refused the inspection for nefarious reasons, such as because Kenneth and Barbara Givens were “disinterested in [Olivia's] best interest,” and did not "want the courts to know where they intendfed] to keep Olivia,” or “what she may be exposed to.” Kenneth Givens specifically objected to the inspection not only on the basis that the home was owned by a nonparty, but also that the inspection was sought to harass him and Barbara Givens and was an invasion of their privacy. In light of the record as a whole, *728 particularly, the bitter nature of many of the pleadings filed in this case, Kenneth and Barbara Givens’ reasons for objecting to the request — whether true or not — were not unreasonable.

. Given the distance between the residences of the parties, there is no dispute that equal sharing is not feasible in this case.

. In Frances Givens' brief, she asserts that in formulating a physical custody allocation that allows Kenneth Givens physical custody periods that are overnight, the trial court placed the best interest of the Olivia "dead last behind the suspect desires of [Kenneth Givens] to sleep with his child, the convenience of [Barbara Givens] and her family, and their questionable claim of a right to privacy at the sake of the child’s safety.” The record before us is completely devoid of any evidence to support these assertions.

.In Frances Givens’ last assignment of error, she also asserts that the trial court erred by applying incorrect principles of law, which errors were prejudicial to her, and by making clearly erroneous findings of fact that were not supported in the record. However, other than her contention that the joint custody plan or physical custody allocation set forth by the trial court was not in Olivia’s best interest, she does not specify what other prejudicial legal errors or manifestly erroneous factual findings were made. Accordingly, we will address this assignment of error solely as it relates to the allocation of physical custody.

. Francis Givens specifically referred to Wesson, Mississippi as a "hick town."

. We note that, contrary to Francis Givens’ assertion, Dr. Simoneaux and Dr. Ginzberg were not the only "qualified experts." Dorothy Day, whose testimony is hereinafter discussed, was also accepted by the trial court as an expert.