WELCH, J.
| ¾James Chad Olivier appeals a judgment that, among other things, awarded the parties joint custody of their minor child, designated Tonya R. Excho Olivier (now “Excho”) as the child’s domiciliary parent, and allocated James specific physical custodial periods.[1] For reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
The parties were purportedly married on June 22, 2007; however, the marriage was subsequently declared absolutely null. See Olivier v. Olivier, 2009-2298 (La.App. 1st Cir.9/10/10), 2010 WL 3518054 (unpublished). The parties had one child, who was born on April 25, 2008, as a result of their relationship. Shortly after the child’s birth, Tonya filed a rule seeking sole custody of the child, or alternatively, that the parties be awarded joint custody of the child, that she be designated as the child’s domiciliary parent, and that James be awarded specific physical custodial periods. In response, James filed a reconven-tional demand seeking sole custody of the child, or alternatively that the parties be awarded joint custody of the child, that he be designated as the child’s domiciliary parent, and that Tonya be awarded specific physical custodial periods.
On June 17, 2008, the parties stipulated to an interim order of custody. Specifically, the parties agreed that they would have joint custody of the minor child; that Tonya would be designated as the child’s domiciliary parent; and that James would have physical custody of the minor child on Mondays, Wednesdays, and Fridays from 6:00 p.m. until 9:00 p.m., on alternating *25 Saturdays from 12:00 |sp.m. until 4:00 p.m., and on alternating Sundays from 10:00 a.m. until 2:00 p.m. This interim order further provided that the matters set forth therein were set without prejudice to either party and were temporary in nature.
Following this interim order, numerous pleadings were filed by both parties pertaining to modifications of the physical custodial arrangement for various reasons. Finally, on September 13 and 16, 2010, a trial pertaining to custody (initial setting) was held. Following trial, the trial court rendered judgment, which was signed on October 26, 2010, awarding the parties joint custody of the minor child; designating Tonya as the domiciliary parent; and allocating James physical custodial periods with the minor child on every other weekend from Friday at 5:30 p.m. until Sunday at 5:30 p.m., on Wednesday from 12:00 p.m. until Thursday at 6:00 p.m. during the week following his weekend visitation, and on alternating holidays.[2]
The judgment also provided that Tonya did not have to disclose or provide James with her home address, that James was to refrain from making any derogatory or personal comments about Tonya in his communications with her or in the presence of the minor child, and that neither party would be allowed to have a member of the opposite sex who was not a spouse or a family member spend the night while exercising physical custody. Additionally, the judgment ordered that the parties were to place the minor child on a consistent diet with regard to her current medical condition; that if the parties had any disagreements concerning the minor child, they should consult with their parenting coordinator; that the parties were to communicate with regard to doctor appointments for the minor child; and that Tonya was to contact a psychologist to be evaluated, to provide the psychologist with a copy of the custody evaluation performed by Dr. Alan Taylor, |4and to undergo any treatment recommended by that psychologist. From this judgment, James now appeals.
ASSIGNMENTS OF ERROR
On appeal, James argues that the trial court erred or abused its discretion in awarding joint custody with Tonya designated as the domiciliary and in its physical custody allocation because: (1) proper weight or consideration to the uncontra-dicted testimony and findings of Dr. Taylor, a psychologist, was not given; (2) the finding that Tonya’s personality disorders did not affect the child was inconsistent with the order for Tonya to undergo psychological evaluation and potential treatment; (3) Tonya’s testimony had no credibility and should not have been accepted by the trial court; and (4) La. C.C. arts. 131 and 134 and La. R.S. 9:335 were not applied or applied incorrectly. James also asserted that the trial court abused its discretion in not allowing James to know Tonya’s physical address because that is where the child resides.
LAW AND DISCUSSION
Each child custody case must be viewed in light of its own particular set of facts and circumstances. Perry v. Monistere, 2008-1629, 2008-1630 (La.App. 1st Cir.12/23/08), 4 So.3d 850, 852. Louisiana Civil Code article 131 provides that “the court shall award custody of a child in accordance with the best interest of the child.” Thus, the paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 *26 So.2d 731, 738. In determining the best interest of the child, La. C.C. art. 134 provides:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child |filove, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in this article is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b). Additionally, the “best interest of the child” test under La. C.C. arts. 131 and 134 is a fact-intensive inquiry, requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Martello v. Martello, 2006-0594 (La.App. 1st Cir.3/23/07), 960 So.2d 186, 191. Hence, every child custody case is to be viewed on its own particular set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Id.
| fiThe trial court is vested with broad discretion in deciding child custody cases. Because of the trial court’s better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. Thus, a trial court’s determination regarding child custody will not be disturbed absent a clear abuse of discretion. Martello, 960 So.2d at 191-92.
In this case, as in most child custody cases, the trial court’s determination as to what was in the best interest of the child was based heavily on factual findings. It is well settled that an appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
*27 In oral reasons for judgment following the custody trial, the trial court specifically recognized at the outset that custody was to be determined in accordance with the best interest of the child and the enumerated factors set forth in La. C.C. art. 134. The trial court also noted that the evidence presented in this case focused on Dr. Taylor’s evaluation and testimony concerning Tonya; the credibility of Tonya, particularly with regard to her marriage and divorce from Peter Excho; the incident (or series of incidents) that occurred at the hospital when the minor child was born; and the inappropriate behavior displayed by James in his interactions and communications with Tonya.
According to the record, Dr. Taylor was not appointed by the trial court as an expert in this case, and he did not perform a custody evaluation in this case. See La. R.S. 9:331. Rather, he was appointed to perform a custody evaluation in 2007 for another custody dispute involving Tonya and her ex-husband, Peter. ^Nonetheless, the trial court accepted Dr. Taylor as an expert in clinical psychology and his 2007 custody evaluation was accepted into evidence.
According to Dr. Taylor’s 2007 evaluation, the psychological tests administered to Tonya revealed “marked elevation on the paranoia subscale and a borderline elevation on the depression subscale” indicating “the use of multiple paranoid defenses with a possible breakdown of reality testing.” However, it also indicated that her current “day to day coping and practical self-sufficiency still test[ed] within the normal range.” In the evaluation, Dr. Taylor concluded that although he was concerned about the psychological healthiness of both parents, he believed that both parents clearly loved their children, that they were both very closely involved with their children, and that in terms of day-to-day oversight for routine activities of the children, that there was no significantly greater risk or advantage for custody in either parent. Therefore, by default, he recommended that Tonya and her ex-husband, Peter, share equal physical custody. He also recommended that mental health professionals provide oversight and advice to both parents concerning appropriate parenting approaches.
Dr. Taylor’s testimony at the custody hearing in this case essentially reiterated the methodology and findings from the 2007 custody evaluation. He acknowledged that he did not evaluate James, did not administer any psychological testing on James, and did not know anything about James’s parental fitness or ability to parent a child. He unequivocally stated that he could offer no opinion regarding child custody in this case.
With regard to the testimony of Dr. Taylor and his 2007 evaluation of Tonya, the trial court stated that even accepting Dr. Taylor’s diagnoses of Tonya with depression and personality disorders (nonspecific paranoia and borderline histrionic), it was not convinced that either the depression or personality disorders had a “negative impact” on either her relationship with James or on her ability to _LsParent the child to the extent that it was contrary to the best interest of the child. Nevertheless, the trial court ordered Tonya to be re-evaluated by a mental health professional and to follow any recommended treatment. The trial court reasoned that although it had not seen Tonya’s diagnoses manifest in a way that was contrary to the best interest of the child, her conditions had not been adequately dealt with in terms of treatment.
James contends that the trial court’s decision to accept Dr. Taylor’s diagnoses concerning Tonya and its order that Tonya *28 see a mental health professional demonstrates that the trial court had “serious concerns as to the mental health of Tonya.” Further, James contends that the trial court’s findings on this issue are inconsistent with its determination of custody and what was in the best interest of the child and that the trial court judgment designating Tonya as the domiciliary parent must be reversed. We disagree.
The trial court is not required to give any extra credence to the testimony of experts. Givens v. Givens, 2010-0680 (La.App. 1st Cir.12/22/10), 53 So.3d 720, 729. It is well settled in Louisiana that the fact finder is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Id. The fact finder may accept or reject in whole or in part the opinion expressed by an expert. Id. The effect and weight to be given expert testimony is within the trial court’s broad discretion. Id.
Dr. Taylor specifically testified that, in this case, he did not perform a custody evaluation, that he had no opinion on custody, and thus, no opinion as to what was in the best interest of the child. Accordingly, the trial court was well within its discretion to accept or reject any part of Dr. Taylor’s opinions and to make its own factual findings as to what was in the best interest of the minor child. Dr. Taylor’s evaluation and opinion was offered by James solely as evidence of Tonya’s mental health, which was only one of many factors that the trial court | acould consider in its determination of the best interest of the child. See La. C.C. art. 134(7).
Despite Dr. Taylor’s findings and recommendations concerning Tonya, Dr. Taylor never expressed the opinion that Tonya was mentally or psychologically unfit to have custody (or to be designated as the domiciliary parent) of the children at issue in that case. Although the trial court accepted Dr. Taylor’s opinions regarding Tonya’s mental health conditions and her need for therapy to address those conditions, its ultimate conclusion that those conditions had not negatively impacted her ability to parent the minor child was neither inconsistent with its award of custody nor manifestly erroneous. Notably, Dr. Taylor found that Tonya’s “day to day coping and practical self-sufficiency” were normal and that she was able to provide “day-to-day oversight” for her children’s routine activities. Additionally, the trial court was personally able to observe Tonya during trial and to make its own finding as to how her conditions affected the child and the best interest of the child.
Next, James contends that the trial court erred in affording any credibility to the testimony of Tonya, claiming the record was “replete with uncontrovertable evidence of her misrepresentations to the court.” Specifically, he argues that Tonya “lied concerning her commission of bigamy” in attempting to obtain spousal support, pointing in support of this argument to our prior opinion in Olivier; that she lied in attempting to obtain restraining orders; and that she lied to obtain the judgment at issue. Based on the record that is before us, we disagree.
With regard to issues concerning the credibility of witnesses, we recognize that where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993). When a fact finder is presented with two permissible | inviews of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Additionally, where the fact *29 finder’s conclusions are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, 549 So.2d at 844. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, we may well find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. But where such factors are not present and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 845.
In Olivier, the issue before us was whether the trial court’s determination that Tonya had no right to claim spousal support because she was married to Peter at the time of her marriage to James was manifestly erroneous. Olivier, 2009-2298 at p. 4. While we ultimately determined that the trial court’s factual finding that Tonya and Peter had common law marriage at the time that she attempted to contract her marriage to James had a reasonable basis in the record and was obviously based on a credibility determination, we never concluded or held that Tonya misled, lied, or was dishonest to the court. Olivier, 2009-2298 at pp. 6-7. Thus, James’s reliance on Olivier to support his argument that Tonya has lied and made misrepresentations to the court is misplaced.
Furthermore, the trial court was obviously aware of the credibility determinations made in Olivier because the same trial court judge that rendered | nthe judgment on appeal in Olivier was the same trial court judge that rendered the judgment on appeal herein. In its oral reasons for judgment, the trial court duly noted that evidence had been presented with regard to Tonya’s credibility (and specifically relating to her divorce from Peter), that it had already ruled on that issue, but would, nevertheless, accept that evidence as presented on the issue of Tonya’s credibility. Therefore, we find no support in the record for James’s contention that the trial court erred in accepting Tonya’s testimony because she allegedly lied concerning her commission of bigamy.
With regard to James’s claim that Tonya’s testimony was not credible because she purportedly lied to obtain restraining orders against him, again we find nothing in the record to support these allegations. The record before us reflects that Tonya filed two petitions for protection from abuse pursuant to La. R.S. 46:2131, et seq.; however, neither petition culminated in an injunction against James because both petitions were ultimately dismissed — one voluntarily by Tonya and one involuntarily after a hearing by the trial court.
Tonya’s first petition for protection from abuse was based on a threatening phone call and voice mail message on Tonya’s mobile phone, which reflected that the caller had placed the threatening phone call from Tonya’s residence when she was not at home (thus, giving the appearance that the threatening call had been placed by an intruder). James admitted that he was responsible for the threatening phone call/ voice mail message, but claimed that he intended it to be a “joke.” According to the record, Tonya voluntarily agreed to dismiss the petition for protection from abuse, at James’s cost, in exchange for James’s agreement to be evaluated by Dr. *30 Kumari Moturu, a psychiatrist, and to follow Dr. Moturu’s recommendations concerning personal counseling.
Tonya’s second petition for protection from abuse was based on an incident that occurred when James was returning the minor child to Tonya following his |12physical custodial period. This petition was dismissed by the trial court following a hearing on the basis that Tonya failed to prove, by the appropriate standard, the allegations contained in the petition.[3]
The transcript from the hearing on the petition for protection is not contained in the record before us, and the trial court judge that rendered the judgment of dismissal was the predecessor judge of the present trial court judge. Therefore, we do not know what the evidence from that hearing consisted of or the exact basis on which the petition was dismissed. In the petition, Tonya claimed that James was attempting to gain entry to her home without her permission, so she quickly closed the door on him in an effort to keep him out. At trial, James did not deny that the incident occurred. However, he claimed that when Tonya shut the door on him, the door chipped his tooth, and so he filed a personal injury lawsuit against Tonya and her insurer, which at the time of trial was still pending. Because there was no dispute that the incident occurred, it was possible for the trial court to have concluded that the dismissal of the petition was not necessarily based on credibility — or a lack thereof — but rather that the incident at issue did not rise to the level of “abuse” warranting protection under the domestic abuse assistance statutes. Therefore, we find no support in the record for James’s contention that the trial court erred in accepting Tonya’s testimony because she allegedly lied to obtain restraining orders against him.
Insofar as James contends that Tonya lied to obtain the custody judgment on appeal herein, again, we find a lack of evidence in the record to support his assertions. The trial court was able to listen to Tonya during her testimony and to observe her during her testimony and throughout the trial, and therefore, make the 113necessary credibility determinations concerning her testimony. After hearing the testimony of Tonya and assessing her character, attitude and demeanor, the trial court apparently concluded that she was a credible witness. We have reviewed Tonya’s testimony in its entirety and find that the trial court’s credibility determination was reasonable. The record before us does not contain any documents or objective evidence that so contradicts Tonya’s testimony or establishes that Tonya’s testimony was so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit her testimony. In the absence of such evidence, the trial court’s decision to credit her testimony cannot be manifestly erroneous or clearly wrong. As such, we find no merit to James’s contention that the trial court erred in accepting Tonya’s testimony because she allegedly lied to obtain this custody judgment.
Next, James contends that the trial court erred in its application of La. C.C. arts. 131 and 134 and failed to consider the best interest of the child when it designat *31 ed Tonya as the domiciliary parent and when it allocated his physical custodial periods under La. R.S. 9:335.
As previously noted the trial court stated at the outset that its determination of custody would be in accordance with what was in the best interest of the child. Based on the significant amount of evidence of inappropriate and uncooperative behaviors exhibited by James both in his interactions and communications with Tonya, the trial court was greatly concerned with how James’s negative feelings for Tonya had impacted the best interest of the child. Specifically, the trial court found that James’s had acted “inconsistent with someone ... acting in the best interest of the child,” that he was not “fostering] good communication between the parties,” and that he had placed himself and his own feelings before those of the child. The trial court’s concern over these issues and how it impacted the best interest of the child was so great that it “seriously considered sole custody” in 114favor of Tonya.
Therefore, in determining the best interest of the child and in considering the factors set forth in La. C.C. art. 134, it is clear from the trial court’s reasons for judgment that it gave a great deal of weight and consideration to factor number 10 — the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. Further, it is clear that this factor weighed so heavily against James that the trial court concluded it was in the best interest of the child for the parties to be awarded joint custody with Tonya designated as the domiciliary parent.
Based upon our review of the record, we find that the trial court’s conclusion that James would not be willing to facilitate a close and continuing relationship between the child and Tonya is fully supported by the record and is not clearly wrong. Additionally, we do not find that the weight assigned to this factor by the trial court was an abuse of the discretion afforded it. The record before us is replete with evidence confirming the trial court’s findings that James’s negative feelings and behavior toward Tonya had negatively impacted the child’s best interest and that the child’s best interest would be served by designating Tonya as the domiciliary parent.
For instance, there was testimony by Tonya and her mother, Carol Bying, that following the birth of the child, when Tonya and the child were still in the hospital, that James threatened to harm Tonya and the child, that he had to be removed by the hospital staff, and that he had to be limited to visitation supervised by hospital personnel. Additionally, the record contains several email communications from James to Tonya that can only be described as mean-spirited, insulting, and harassing. And, when James was questioned concerning “the one thing in [his] life that was most important” his answer was God, then himself, and then the minor child.
11sWith regard to the other factors set forth in La. C.C. art. 134, we recognize that there is evidence demonstrating that both Tonya and James have a great deal of love, affection, and emotional ties to their child, and that they both have the capacity and disposition to give the child love, affection, and spiritual guidance; to continue the education and rearing of the child; and to provide the child with food, clothing, medical care, and other material needs. However, Tonya has been the child’s primary caregiver since the child’s birth, and the child has resided with Tonya (and her other two children) since birth. Although there was evidence presented by James concerning Tonya’s mental health (as previously discussed), we also recognize there *32 was evidence presented raising the issue of James’s mental health. For instance, James’s “MySpace” page contained numerous quotations from serial killers, and he utilized “Twist3d.one” or “twist3dl” (twisted one) for his usernames, email address, and logo. Additionally, there was evidence that James spent time in a mental health hospital in 2007, for issues related to prescription drug usage.
There was also evidence presented that James was not cooperating in potty-training the child or in following recommended medical treatment with regard to bowel problems the child was suffering from. Additionally, Tonya is currently residing in New Orleans and James is currently residing in Baton Rouge. According to the testimony at trial, when the child is in Tonya’s physical custody, the child does not have to be placed in daycare, since Tonya is able to work from home. However, when the child is in James’s care, because James works outside of the home, the child must be placed in a daycare. The evidence further revealed that this daycare is an un-licensed, in-home daycare provider, and that the number of children at the daycare providers’ home exceeds the number of children that state law allows for an in-home daycare facility.
After considering all of the evidence in this record and the trial court’s broad | ^discretion in making custody determinations, we do not find that the trial court incorrectly applied the provisions of La. C.C. arts. 131 and 134 or that it abused its discretion in awarding joint custody with Tonya designated as the domiciliary parent.
When parents share joint custody of children, La. R.S. 9:335 requires an implementation order to be rendered (except for good cause shown), which allocates each party’s physical custodial time periods, as well as the legal authority and responsibility of the parents. Louisiana Revised Statutes 9:335(A)(2)(a) and (b) requires frequent and continuing contact with both parents, and to the extent that it is feasible and in the best interest of the child, that physical custody of the child be shared equally. The trial court is imbued with much discretion in the determination of what constitutes feasible, reasonable time periods of physical custody. Givens, 53 So.3d at 728.
In this case, the trial court allocated James physical custody every other weekend from Friday at 5:30 p.m. until Sunday at 5:30 p.m.; during weeks that James does not have weekend visitation, on Wednesday at 12:00 p.m. until Thursday at 6:00 p.m.; and one-half of all extended and alternating holiday periods. Based on our review of the evidence, as previously detailed herein, we find no manifest error in the trial court’s apparent conclusion that equal sharing of the child was neither feasible nor in the best interest of the child. The physical custody allocation in favor of James considers the distance between the parties’ residences, the age and needs of the child, and ensures that James will have frequent and continuing contact with the child, as he is provided substantial physical custodial time periods on a weekly basis. Therefore, we do not find that the trial court incorrectly applied the provisions of La. R.S. 9:335, nor abused the discretion afforded it in determining the proper allocation of physical custody as set forth in the judgment.
117Lastly, in this case, the judgment of the trial court provided that Tonya did not have to disclose or provide James with her home address. Since Tonya was designated as the child’s domiciliary parent, her home address is where the child will physically reside. On appeal, James contends that it was an abuse of the trial court’s discretion to issue an order effec *33 tively precluding him from knowing where his child is physically residing because there is no evidence in the record to support such an order. We disagree.
As previously noted, the trial court is vested with vast discretion in matters of child custody. This discretion would necessarily include the authority to issue any orders it deems necessary, based on the evidence, to be in the best interest of the child. The trial court’s order that Tonya did not have to disclose her address to James was issued prior to the trial on custody, and appears to have been based on the allegation that James was, on a frequent basis, in close proximity to Tonya’s home (without a reason for being there) with a video camera. Following the custody trial, the trial court maintained the order. As previously discussed, the trial court found, and the record before us establishes, that James has acted inappropriately in his interactions and communications with Tonya, that James’s negative feelings and behavior toward Tonya have negatively impacted the child’s best interest, and that James harbors a great deal of animosity and bitterness toward Tonya. Based on this evidence, we cannot say the trial court abused its discretion in determining that an order that Tonya did not have to provide her home address to James was necessary and in the best interest of the child.
CONCLUSION
For all of the above and foregoing reasons, the October 26, 2010 judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant/appellant, James Chad Olivier.
AFFIRMED.
McCLENDON, J., agrees and assigns additional reasons.
PETTIGREW, J., concurs in part and dissents in part and assigns reasons.
McCLENDON, J., agrees and assigns additional reasons.
11 While it is preferable in joint custody cases for each parent to know the address of the other, in situations where said knowledge creates a serious risk of danger to the other parent, a legitimate basis exists for the court to allow the withholding of said information. Acknowledging that these are fact intensive cases, in this case, the trial court had a reasonable basis for not requiring Tonya to provide her home address to James. As noted by the majority, James displayed inappropriate behavior in his interactions and communications with Tonya, had threatened to harm Tonya, had sent mean-spirited, insulting, and harassing e-mails to Tonya, utilized “Twist3d.one” or “twist3dl” for his user-name, e-mail address, and logo on a social website and included numerous quotes from serial killers thereon, had spent time in a mental health hospital in 2007 for issues related to prescription drug usage, and had left a threatening call/voice message for Tonya, which appeared to have been made from inside of her home. Moreover, Tonya had previously filed two petitions for protection from abuse from James. Under these facts, I do not believe the “welfare of the child” would require the production of an address. See LSA-R.S. 9:336.

. Tonya and James were awarded joint custody of their minor child. However, we note that both parties and the trial court have used the term “visitation” with reference to James’s custodial time. "Visitation,” as provided for in La. C.C. art. 136, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their children is more properly described as a physical custody allocation of a joint custody plan, rather than as visitation. La. R.S. 9:335; Cedotal v. Cedotal, 2005-1524 (La.App. 1st Cir.l 1/4/05), 927 So.2d 433, 436; see Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 737.

. The judgment also provided that physical custody during the summer months would be ‘'revisited” when the minor child reached school-age.

. At the hearing on the rule, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B). "Domestic abuse” is defined in the domestic abuse assistance statutes as including, but not limited to, "physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another.” La. R.S. 46:2132(3).