WELCH, J.
|2In this child custody dispute, the mother, Nicole Renee Nugent Tinsley, appeals a trial court judgment that, among other things, modified the parties’ joint custodial arrangement to award the father, Jason Lee Tinsley, equal physical custody of the minor child, as well as certain decision *408 making authority. For the reasons that follow, we reverse the judgment insofar as it modified the physical custodial arrangement and the authority of the domiciliary parent and we affirm the trial court’s decision to deny Nicole Tinsley’s request for injunctive relief.
I. FACTUAL AND PROCEDURAL HISTORY
The parties in this matter, Nicole Tins-ley and Jason Tinsley, were married on March 10, 2001, and they had one child during their marriage: K.N.T., born February 27, 2002. On July 28, 2011, Jason Tinsley filed a petition for divorce, seeking among other things, that the parties be awarded joint custody of their minor child, with each party having physical custody of the child on an equal basis, and that child support be calculated and fixed according to the child support guidelines. On July 29, 2011, Nicole Tinsley filed a petition for divorce also requesting that the parties be awarded joint custody of their minor child, that she be designated as the child’s domiciliary parent, subject to specific custodial periods by Jason Tinsley, and that she be awarded child support. The two suits were subsequently consolidated in the trial court.
The parties subsequently entered into a stipulated (or consent) judgment providing that the parties would be awarded joint custody of the minor child, that Nicole Tinsley would be designated as the domiciliary parent, and that Jason Tinsley would have physical custody of the child in accordance with a specific schedule.[1] In addition, this judgment provided that Jason Tinsley would pay child |ssupport in the amount of $830.00 per month, as well as 80% of all out-of-pocket medical expenses, tuition (including registration and required school fees), and extracurricular activities agreed upon by the parties. The trial court signed this stipulated judgment regarding child custody and support on February 6, 2012, and a judgment of divorce was rendered and signed on August 7, 2012.
On September 28, 2012, Jason Tinsley filed a rule for modification of custody, visitation, child support, and other ancillary matters. Therein, he claimed that there had been a material change in circumstances since the February 6, 2012 consent judgment and the filing of the rule and that it was in the best interest of the minor child to modify the physical custodial schedule so that the parties would share equal physical custody of the child. In response to this rule, the parties again entered into a stipulated judgment maintaining the award of joint custody with Nicole Tinsley designated as the domiciliary parent, but modifying Jason Tinsley’s physical custodial schedule.[2] The trial court signed this stipulated judgment regarding child custody and support on February 21, 2013.
On September 16, 2014, Jason Tinsley filed another rule for change in custody. In that rule, he alleged that since the February 21, 2013 stipulated judgment, there had been a material change in circumstances affecting the welfare of the minor child and that it was in the best interest of *409 the minor child to modify the parties joint custody arrangement such that he should be designated as the minor child’s domiciliary parent subject to specific physical custodial periods in favor of Nicole Tinsley, or alternatively, that the parties share equal physical custody of the minor child. In response, on January 20, 2015, Nicole Tinsley filed 14an answer generally denying the allegations of Jason Tinsley’s rule and a reconventional demand requesting relief on various ancillary matters, including contempt for Jason Tinsley’s failure to pay his pro-rata share of tutoring, counseling fees, and school registration for the child. Thereafter, on November 17, 2015, Nicole Tinsley also sought an injunction seeking to prohibit Jason Tinsley and his wife from posting embarrassing pictures of the minor child on their social media accounts.
After a full trial on the merits, which took place on January 21 and February 12, 2016, the trial court took the matter under advisement. On February 29, 2016, the trial court rendered judgment (with written reasons assigned) finding that Jason Tinsley had proven that there had been a material change in circumstances since the rendition of the previous custody judgment and that a modification of the parties’ custodial arrangement was in the best interest of the child. Based on that factual finding, the trial court modified the parties’ custodial arrangement to provide that the parties would share physical custody of the child on a week to week schedule, i.e., on a 50/50 basis. Although the trial court maintained Nicole Tinsley as the domiciliary parent, it modified her authority as the domiciliary parent by requiring the parties to mutually agree on the child’s high school selection and her Attention Deficit Disorder (“ADD”) treatment and medication and by granting Jason Tinsley the right to select the tutor for the minor child, with each party being responsible for their pro rata percentage of the cost of tutoring. The trial court also declined to enjoin Jason Tinsley and his new wife from posting embarrassing pictures of the minor child on social media. A judgment in conformity with the trial court’s written reasons was signed by the trial court on March 15, 2016, and it is from this judgment that Nicole Tinsley has appealed.
IJI. ASSIGNMENTS OF ERROR
On appeal, Nicole Tinsley asserts that the trial court, erred in: (1) finding that a change in circumstances materially affecting the welfare of the child had occurred since the February 21, 2013 stipulated judgment of custody; (2) applying an incorrect burden of proof to Jason Tinsley; (3) failing to give proper weight to the preference expressed by the minor child; (4) finding that it was in the minor child’s best interest that physical custody be modified to an alternating week schedule; (5) ordering the parties to mutually agree on high school selection and ADD treatment and medication; (6) ordering that Jason Tinsley would have the right to select tutors for the minor child; (7) failing to enjoin Jason Tinsley and his new wife from posting embarrassing photos or comments about the minor child on social media;[3] and (8) limiting the testimony of Marcia Cox, the court appointed counselor for the minor child.
*410 III. LAW AND DISCUSSION

A. Modification of Physical Custody and Authority of the Domiciliary Parent

1, General Legal Precepts: Child Custody and Domiciliary Parent
The paramount consideration in any determination of child custody is the best interest of the child. See La. C.C. art. 131; Evans v. Lungrin, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731, 738. If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. La. C.C. art. 132. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent | fiis shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. Id.
In determining the best interest of the child, La. C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the trial court, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Furthermore, La. R.S. 9:335 provides:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
|7(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
*411 (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.
2. Standard of Review
Every child custody case must be viewed in light of its own particular set of facts and circumstances. Gill v. Dufrene, 97-0777 (La.App. 1st Cir. 12/29/97), 706 So.2d 518, 521; Major v. Major, 2002-2131 (La.App. 1st Cir. 2/14/03), 849 So.2d 547, 550. Thus, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major, 849 So.2d at 550; Elliott v. Elliott, 2010-0755 (La.App. 1st Cir. 9/10/10), 49 So.3d 407, 411-412, writ denied, 2010-2260 (La. 10/27/10), 48 So.3d 1088.
In this case, and as in most child custody cases, the trial court’s determination was based heavily on factual findings. It is well settled that an ^appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La. 1993).
3. Burden of Proof: Modification of a Custody Plan
There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree. Elliott, 49 So.3d at 412; see also Evans, 708 So.2d at 738. A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Elliott, 49 So.3d at 412. By contrast, a non-considered decree or uncontested decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. Id.
Once a considered decree of permanent custody has been rendered by a *412 court, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Id. citing Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La. 1986).
 However, in cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable. Elliott, 49 So.3d at 412-413; see also Evans, 708 So.2d at 738. Rather, a party seeking a modification of a consent decree must prove: (1) that there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered; and (2) that the proposed modification is in the best interest of the child. Elliott, 49 So.3d at 413; see also Richard v. Richard, 2009-0299 (La.App. 1st Cir. 6/12/09), 20 So.3d 1061, 1066; Evans, 708 So.2d at 738.
First and foremost, on appeal, Jason Tinsley, relying on Tracie F. v. Francisco D., 2015-1812 (La. 3/15/16), 188 So.3d 231, 239-240 and Evans, 708 So.2d at 738, claims that his burden of proof was to show (1) that there has been a material change in circumstances since the previous custody decree and (2) that the proposed modification was in the best interest of the child. In other words, he argues that “[tjhere is no requirement [that he] prove the material change [in circumstances] affects the child’s welfare.” However, we find no merit to his argument.
First, we note that neither Tracie F., 188 So.3d at 239-240 nor Evans, 708 So.2d at 738 set forth that the proponent of a change in custody need not prove that the change in circumstances affect the child’s welfare; rather both eases merely set forth the well-established rule that where the original (or previous) custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child.
In Shaffer v. Shaffer, 2000-1251 (La. App. 1st Cir. 9/13/00), 808 So.2d 354, 357 n.2, writ denied, 2000-2838 (La. 11/13/00), 774 So.2d 151, this court, citing Evans, 708 So.2d at 738, specifically noted that the first prong of this test to determine whether custody should be modified is sometimes referred to as “a material change in circumstances,” and other times is expressed as “a change in circumstances materially affecting the welfare of the child.” This court further noted that this difference in the language used by the jurisprudence to determine whether custody should be modified did not impose a different standard on the party seeking modification, and that regardless of “whether the test is referred to as ‘a material change in circumstances’ or ‘a change in circumstances materially affecting the welfare of the child,’ the trial court is faced with the same determination.” (Emphasis added.) Shaffer, 808 So.2d at 357 n.2. Indeed, as Justice Weimer (then Judge Weimer) noted in his concurring opinion, the difference in the language used for the first prong of this test was simply a “lack of precision in the language of [the] cases” involving modifications of custody following a stipulated judgment. Shaffer, 808 So.2d at 360 (Weimer, J., concurring). Justice Weimer further noted that while the difference in language was “slight” and perhaps a mat *413 ter of “semantics,” “[i]t is the child upon whom we must focus ... [l]ife changes may occur, but if the changes do not have an effect on the welfare of the child, then no change in custody is justified.” Id. Thus, “[bjecause the paramount consideration in any determination of child custody is the best interest of the child, the party séeking a modification following a stipulated judgment of custody should prove: 1) a change in circumstances materially affecting the welfare of the child has occurred since the most recent decree and 2) the modification proposed is in the best interest of the child.” Id. (Footnote omitted).
In addition, the well-established and often-cited jurisprudence from this court with regard to modifications of custody following a consent decree unequivocally provide that the change in circumstance must affect the welfare of lnthe child. See for e.g., Richard v. Richard, 2009-0299 (La.App. 1st Cir. 6/12/09), 20 So.3d 1061, 1066 and MacHauer v. Randolph, 99-0086 (La. App 1st Cir. 9/24/99), 754 So.2d 1042, 1043 (providing that if a prior award of custody has been made by consent decree, the party seeking a change in custody “must prove that a change materially affecting the welfare of the child has occurred since the original decree ... [and] must also show that the proposed modification of custody is in the best interest of the child” (Emphasis added)); Elliott, 49 So.3d at 413 and Elliott v. Elliott, 2005-0181 (La.App. 1st Cir. 5/11/05), 916 So.2d 221, 227, writ denied, 2005-1547 (La. 7/12/05), 905 So.2d 293 (providing that a party seeking a modification of a consent decree must prove that “there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child” (Emphasis added)); and Carollo v. Carollo, 2013-0010 (La.App. 1st Cir. 5/31/13), 118 So.3d 53, 62 and Cedotal v. Cedotal, 2005-1524 (La.App. 1st Cir. 11/4/05), 927 So.2d 433, 436 (providing that “[w]hen a custody decree is, as herein, a stipulated or consensual judgment, a party seeking modification of custody must prove that there has been a material change in circumstances (also referred to as a change in circumstances materially affecting the welfare of the child) since the original decree, as well as prove that the proposed modification is in the best interest of the child.”)
In this case, there is ho dispute that the underlying custody decree (the February 21, 2013 custody decree) was a non-considered decree—it was a stipulated judgment wherein the parties agreed that they would have joint custody of the child, with Nicole Tinsley designated as. the child’s domiciliary parent, subject to Jason Tins-ley having specific periods of physical custody. Therefore, in order to modify that custody plan, Jason Tinsley had to prove, and the trial court had to find: (1) that there had been a change in circumstances materially affecting [12the welfare of the child since the February 21, 2013 custody decree/stipulated judgment; and (2) that modification proposed by Jason Tinsley— ie., that he be designated as the domiciliary parent subject to specific physical custodial periods in favor of Nicole Tinsley, or alternatively, that the parties share equal physical custody of the minor child with a modification in the authority of the domiciliary parent—was in the best interest of the child. See Elliott, 49 So.3d at 413.
In the trial court’s reasons for judgment, it found that Jason Tinsley met his burden of proving a material change in circumstances because: (1) Jason Tinsley had remarried since the February 21, 2013 judgment, (2) he had recently moved his residence closer to both the minor child’s school and Nicole Tinsley’s house, (3) the *414 child’s school performance had “suffered tremendously in recent years,” and (4) the minor child had not been properly treated for ADD. In addition, after considering all of the evidence and the factors set forth in La. C.C. art. 134, the trial court found that a modification of custody was in the child’s best interest and awarded the parties shared physical custody of the child on a week-to-week basis. Although the trial court maintained Nicole Tinsley as the domiciliary parent, it modified her authority as the domiciliary parent by requiring the parties to mutually agree on the child’s high school selection and ADD treatment and medication and by granting Jason Tinsley the right to select the tutor for the minor child.
4. Material Change in Circumstances Affecting the Welfare of the Child
On appeal, Nicole Tinsley contends that the trial court’s factual finding that there had been a material change in circumstances affecting the welfare of the minor child was manifestly erroneous because there was no evidence in the record establishing that either Jason Tinsley’s remarriage or his move closer to the minor child’s residence had any effect on the welfare of the child, the record established that the minor child’s grades had improved (rather than suffered) since the 113rendition of the February 21, 2013 judgment, and the record failed to establish that the minor child was not being treated properly for ADD. We agree.
First, with respect to ADD, although Jason Tinsley claimed that the minor child had been diagnosed with ADD but was not being given her medication as prescribed, the record herein does not clearly establish whether the minor child was ever formally evaluated or diagnosed with ADD or whether it was being treated improperly.
According to Nicole Tinsley’s testimony, the minor child was not formally evaluated for ADD. Nicole Tinsley stated that she initiated an appointment with the child’s pediatrician to discuss whether the child had ADD and that Jason Tinsley was present for this appointment. She stated that the child’s pediatrician did not perform any formal testing or evaluation to determine whether the child had ADD; instead, the pediatrician asked a few questions and then issued the child a prescription. Nicole Tinsley testified that she began giving the child her medication as prescribed on school days; however, she said that she did not give the child the medication on weekends or when the child was not in school because she was told by the pediatrician’s office that it was not necessary- at those times. According to Nicole Tinsley, shortly after the minor child commenced taking the medication, the child began complaining about headaches and stomachaches. When Nicole Tinsley reported this to the child’s pediatrician, the pediatrician increased the dosage. However, when the child’s headaches and stomachaches continued and did not subside, Nicole Tins-ley called the pediatrician’s nurse and the decision was made to wean the child off the medication. Jason Tinsley admitted that he was aware that Nicole Tinsley had discussed weaning the child off the medication with the child’s pediatrician. The child’s medical records from the pediatrician were not offered into evidence by either party.
1 uAccording to Nicole Tinsley, none of the minor child’s teachers have suggested to either her or Jason Tinsley that the minor child needed to be evaluated or treated for ADD. Nicole Tinsley stated that she would like to have the child formally evaluated for ADD; however, Jason Tinsley stated that he did not think that the ADD medication helped the child and he did not think that the child needed any *415 additional testing or to be evaluated for ADD or any other learning disability.
Based on our review of the record, we find that it fails to establish any factual support for the trial court’s conclusion that the minor child was being treated improperly for ADD. As such, the trial court’s factual determination that this constituted a change in circumstances materially affecting the child was manifestly erroneous.
With respect to the minor child’s school performance, we note that the evidence at trial established that the child has performed poorly at school for a number of years and this was not a “change” that has occurred since the rendition of the February 21, 2013 judgment. When the February 21, 2013 judgment was rendered, the minor child’s poor grades were a major issue because Jason Tinsley specifically alleged in his October 5, 2012 rule to modify custody (the rule that led to the February 21, 2013 stipulated judgment) that the minor child was not adequately prepared for homework and/or tests while in the physical custody of Nicole Tinsley, that he was better suited to assist the child with her studies, and that he could ensure that the child kept up with her school work and remained in good standing. Despite these allegations and the child’s poor school performance, Jason Tinsley entered into the February 21, 2013 stipulated judgment.
Furthermore, the record does not support the trial court’s conclusion that the minor child’s grades have “suffered” since the February 21, 2013 judgment. To the contrary, the minor child’s report cards, which were offered into evidence, 11Breflects that the child’s grades have improved, albeit slightly, since the rendition of that judgment. At the time of the February 21, 2013 judgment, the minor child was in 5th grade and her grades for the third nine weeks in her core subjects were as follows: Religion—C; English—C; Math—C; Reading—D; Science—B; Social Studies—C. When Jason filed the rule to modify custody in September 2014, her most recent report card, from the end of 6th Grade (May 2014), reflected the following grades in her core subjects: Religion—C; English—F; Math—D; Reading—C; Science—C; Social Studies—C, and she was conditionally promoted to 7th grade. Just after Jason filed the rule (October 2014), the minor child received a report card for the first nine weeks of 7th grade, which reflected the following grades in her core subjects: Religion—B; English—B; Math—C; Reading—C; Science—D; Social Studies—C. Thus, the evidence established that the child did not have particularly stellar grades when the parties entered into the February 21, 2013 judgment, but since that time, the child’s grades have slightly improved in some of her core subjects. Accordingly, we find the trial court’s conclusion that there was a change in circumstances affecting the welfare of the child because the minor child’s grades had suffered since the February 21, 2013 judgment was likewise not supported by the evidence and is clearly wrong.[4]
*416 Insofar as Jason Tinsley’s move is concerned, the record reflects that at the time of the February 21, 2013 judgment, Jason Tinsley was residing in Zachary with Michelle Tinsley (his current wife, but then girlfriend). At trial, Jason Tinsley testified that he and Michelle were moving and about to “close” on a house in |) (¡Central, which was closer to the child’s current residence with her mother and Central High School—the high school that the child would likely attend. Notably, Zachary and Central are located adjacent to each other in the northern part of East Baton Rouge Parish. While this change in residence is certainly a change in the life of Jason and his wife, the record contains no evidence as to how this intra-parish move from Zachary to Central affects the welfare of the minor child.
Jason Tinsley contends that a move has been judicially recognized as a material change in circumstances under Distefano v. Distefano, 2014-1318 (La.App. 1st Cir. 1/22/15), 169 So.3d 437, 442 abrogated on other grounds by Hodges v. Hodges, 2015-0585 (La. 11/23/15), 181 So.3d 700. In Distefano, 169 So.3d at 442-445, this court affirmed the trial court’s decision to modify the parties’ custodial arrangement, which was based in part on an inter-parish move by the mother. Therein, when the parties initially separated, they shared equal physical custody of their children pursuant to a verbal agreement. Distefano, 169 So.3d at 439. Eventually, custody was formally set by the trial court because equal physical custody became unfeasible due to the fact that the father was living in Watson (Livingston Parish), where the children attended school and church and participated in extracurricular activities, and the mother, was moving to Zaehary (East Baton Rouge Parish). Distefano, 169 So.3d at 442. Therefore, the trial court awarded the parties joint custody with the father designated as the domiciliary parent, subject to the mother having physical custody for 46% of the time. Id. When the mother moved back to Livingston Parish—“three streets away” from the father—she requested a modification of custody—a return to the previous equal physical custodial schedule. Id. This court affirmed the trial court’s determination that the mother’s move from East Baton Rouge Parish back to Livingston Parish was a material change in circumstances affecting the welfare of the child because 117the record established that the distance between the residences of the parties was a major factor in the initial setting of custody. Id.
We find Distefano is distinguishable because Distefano involved an inter-parish move from East Baton Rouge Parish to Livingston Parish rather than an intra-parish move as in this case. In addition, the determination that the inter-parish move in Distefano constituted a change in circumstances was based on the fact that the distance between the parties’ residences was a major factor in the underlying judgment sought to be modified, whereas in this case, there is no evidence that the distance between Jason Tinsley’s house in Zachary and Nicole Tinsley’s house in Central was a factor under consideration in the underlying judgment or that this distance affected the custodial arrangement in any way. Accordingly, Jason Tinsley’s intra-parish move was not per se a material change of circumstance materially affecting the child’s welfare. See Hensgens v. Hensgens, 94-1200 (La. App. 3rd Cir. 3/15/95), 653 So.2d 48, 53, writ *417 denied, 95-1488 (La. 9/22/95), 660 So.2d 478.
Jason Tinsley lived in East Baton Rouge Parish at the time the February 21, 2018 judgment was rendered, at the time he filed the rule requesting a modification of custody, and at the time of the trial of this matter. Absent some evidence as to how Jason Tinsley’s move within' East Baton Rouge Parish affects the welfare of the minor child, it cannot constitute a material change in circumstances affecting the welfare of the child. Accordingly, the trial court manifestly erred in concluding that Jason Tinsley’s move was a material change in circumstances since the rendition of the February 21, 2013 judgment which warranted a modification of custody.
With respect to Jason Tinsley’s remarriage, the record does indeed reflect that Jason Tinsley married Michelle Tins-ley since the rendition of the February 21, 2013 judgment; again however, the record contains no evidence as to how this | ischange affects the minor child. According to the testimony, Jason Tinsley and Nicole Tinsley separated in July of 2011, and in November or December of 2011, Jason Tinsley moved in with Michelle Tinsley. Therefore, at the time of the initial stipulated judgment of custody (the February 6, 2012) and the subsequent stipulated judgment (the February 21, 2013 judgment), Jason Tinsley and Michelle Tinsley were living together in the same house. Jason Tinsely married Michelle Tinsely on March 22, 2014, and approximately six months later, on September 16, 2014, Jason Tinsley filed the instant request for a modification of custody. Although Jason Tinsley was specifically asked how his marriage to Michelle Tins-ley changed things (or affected) the minor child, he was unable to provide a response other than to say that his bond with Michelle had gotten “closer” since they were married and that he believed there was a “big difference,” as far as commitment, between a marriage and dating somebody.
Jason Tinsley maintains that remarriage has been judicially recognized as a material change in circumstances warranting a modification of custody, citing Bonnette v. Bonnette, 2015-0293 (La. App. 4th Cir. 2/17/16), 185 So.3d 321, writ denied, 2016-0663 (5/20/16), 191 So.3d 1072. Therefore, he claims that his remarriage alone was a change in circumstance sufficient to warrant a modification of custody. We disagree. It is well-settled that a party’s remarriage, by itself, does not constitute a change in circumstances materially affecting a child’s welfare so as to warrant a change in custody. See Mosely v. Mosely, 499 So.2d 106, 108-109 (La. App. 1st Cir. 1986), writ denied, 505 So.2d 1138 (La. 1987); Ketchum v. Ketchum, 39,082 (La. App. 2nd Cir. 9/1/04), 882 So.2d 631, 637; and Shaw v. Shaw, 30,613 (La. App. 2nd Cir. 6/24/98), 714 So.2d 906, 909, writs denied, 98-2414 (La. 11/20/98), 729 So.2d 556 and 98-2426 (La. 11/20/98), 729 So.2d 558.
In Bonnette, 185 So.3d at 323, the trial court modified the designation of the minor child’s domiciliary parent and the child’s principal residence from the _Jjc,mother (in New Orleans) to the father (in Houston). The mother appealed the modification and the appellate court affirmed the trial court’s judgment. Bonnette, 185 So.3d at 323-324 and 335. In doing so, the appellate court determined that the father met his burden of proving a material change in circumstances due to the father’s remarriage; his establishment of a permanent household (at the time the previous stipulated custody decree was entered, the father was in transition betwéen New Orleans and Houston and was living in an apartment that he shared with others); and the change in dynamics of the *418 relationship between the father and the mother following the previous stipulated custody decree. Bonnette, 185 So.3d at 330. Thus, in Bonnette, the father’s remarriage alone did not constitute a change in circumstances warranting a modification of custody; rather, it was one factor in a combination of factors, which when considered together, constituted a change in circumstances warranting a modification of custody. See also Theriot v. Theriot, 2015-311 (La. App. 5th Cir. 10/14/15), 177 So.3d 759, 762; and Richard v. Richard, 2009-0299 (La.App. 1st Cir. 6/12/09), 20 So.3d 1061, 1067.
Thus, while Jason Tinsley’s remarriage was certainly a change in circumstances in his life, absent some evidence that this change affects the welfare of the minor child, his remarriage, by itself, does not constitute a change in circumstances warranting a modification of custody. And, although Jason Tinsley’s remarriage could be considered a factor in a combination of factors constituting a change in circumstance, the record before us contained no other evidence establishing any changes in circumstance affecting the welfare of the minor child since the rendition of the February 21, 2013 stipulated judgment so as to warrant a modification of custody. Accordingly, we find the trial court’s factual determination that Jason Tinsley’s remarriage was a change in circumstances warranting a modification of custody is manifestly erroneous.
| anSince we have determined that the trial court erred in its finding, and that Jason Tinsley failed to prove, that there has been a material change in circumstances affecting the welfare of the minor child since the rendition of the February 21, 2013 stipulated custody judgment, a modification of the February 21, 2013 judgment was not warranted. As such, we must conclude that the trial court abused its discretion in modifying the physical custodial arrangement set forth in the February 21, 2013 judgment and in modifying the general authority of the domiciliary parent to make all decisions affecting the child. See La. R.S. 9:335. Accordingly, the March 15, 2016 judgment of the trial court is reversed insofar as it modified the parties’ physical custodial schedule and modified the domiciliary parent’s authority under La. R.S. 9:335 by requiring the parties to mutually agree on high school selection and ADD treatment and medication and by giving Jason Tinsley the right to select the tutor for the child.[5]

B. Social Media Injunctive Relief

Lastly, on appeal, Nicole Tinsley contends that the trial court erred in failing to enjoin Jason Tinsley, and his wife, Michelle Tinsley, from posting embarrassing photos or comments about the minor child on social media. Nicole Tinsley sought this injunction based on an incident wherein Jason Tinsley, as a means of punishment, forced the minor child to post a picture of herself on her Instagram account holding a sign that said “I WILL BE A LEADER, NOT A LIAR!!” In addition, Jason Tinsley and his wife posted the *419 same photo on their Instagram and Face-book pages, with Jason Tinsley making this photo his profile picture on his l21Facebook page. Nicole Tinsley contended that this form of discipline was inappropriate, humiliating, and demeaning, and therefore, she claimed that Jason Tinsley and his wife should be prohibited from posting such pictures on social media accounts.
The trial court denied Nicole Tinsley’s request for the injunction because it interpreted the request as an attempt to dictate how Jason Tinsley would parent the minor child and did not find the social media activity improper such that Nicole Tinsley should be permitted to control the rearing of the minor while the child was in Jason Tinsley’s physical custody.
Louisiana Code of Civil Procedure article 3601 provides that “[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant....” The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof must be founded on a preponderance of the evidence; hence, the manifest error standard is the appropriate standard of review for the issuance of a permanent injunction. State Machinery & Equipment Sales, Inc. v. Iberville Parish Council, 2005-2240 (La.App. 1st Cir. 12/28/06), 952 So.2d 77, 81.
At trial, Jason Tinsley did not dispute that he used Instagram to publicly punish the child for telling him a lie. According to Jason Tinsley, the child had a friend over to the house and the child and her friend asked if they could ride their bikes to a park, which was approximately one-third of a mile from his house. Jason Tinsley allowed them to go to the park, but told the child and her friend that while they were there, they were not to meet up with anyone else. Jason Tinsley testified that the child and her friend then went to the park and that they spent most of the day there. When the child and her friend got back to the house, he asked them if they saw or met up with anyone while at the park and they responded “no.” The next day, he saw a picture on Instagram that either the minor child or her 122friend had posted. The picture was of the child and her friend at the park; however, there was also a boy in the picture. Jason Tinsley claims that when he showed them the picture, they started “backtracking.” He took the friend home and had a conversation with the child about the incident. He then made the child write lines, he took the picture of the child with the sign, and made the child post it on her Instagram account and he posted it on his Facebook and Instagram accounts as well. He stated that he did this so that “the family” and “her friends” could see the picture and know what she had done. Jason Tinsley admitted that the child did not want to post the picture on her Instagram account and that he did not allow her to remove the picture from her account until the next day after school and that he removed it from his account several days later. Jason Tinsley stated that he made the child post the picture because when she went to school, she had to “own” what she did— that she made a choice to lie. Jason Tins-ley admitted that he thought the child was probably embarrassed by the photo, but he did not think the child was humiliated. He testified that he believed the punishment was appropriate, and that he would do it again if need be. The minor child told the trial court that she was embarrassed and humiliated by the incident.
Based on our review of the record, we cannot say that the trial court’s refusal to issue an injunction against Jason Tinsley and his wife with respect to social media was manifestly erroneous. The record rea *420 sonably supports the trial court’s apparent determination that there was no irreparable injury, loss, or damage that could result to Nicole Tinsley or the minor child. However, we disagree with the trial court’s characterization of Nicole Tinsley’s request for an injunction as an attempt to control Jason Tinsley’s parenting and with its conclusion that Jason Tinsley’s use of social media was not improper.
Under the circumstances of this case, we find Jason Tinsley’s use of social media— particularly his forced takeover of and publishing of content on a minor | ^child’s social media account—was clearly improper and inappropriate. Jason Tinsley staged an intentionally embarrassing picture of the minor child, he then posted the embarrassing picture of the minor child on his social media accounts, and he forced the minor child to post (or publish) the embarrassing picture of herself on her own social media account, all of which was for the sole purpose of punishing the child by notifying the child’s family and friends (and Jason Tinsley’s family and friends) of the child’s transgression—an apparent lie about a boy being at a public park while the child was at the same park with a friend. It is hard to imagine a more improper or inappropriate use of social media by a parent than to use it punitively to publicly humiliate a minor child by requiring a child to publish a photograph of herself wearing the modem day equivalent of a scarlet letter[6] to thereby notify the public of her wrong. Accordingly, we cannot say that Nicole Tinsley’s request for an injunction was an attempt to control Jason Tinsley’s parenting, but rather, was an attempt to protect the minor child from further improper or inappropriate punishment and public humiliation.
However, this court, like the trial court, is reluctant to interfere with a fit parent’s constitutional right to parent and make decisions for their child as they see fit. Therefore, we cannot say that the trial court’s ultimate conclusion that there was no irreparable injury, loss, or damage to occur to the child or Nicole Tinsley was clearly wrong. Therefore, the trial court’s decision to deny Nicole Tinsley’s request for an injunction is affirmed.
CONCLUSION
For all of the above and foregoing reasons, the March 15, 2016 judgment of the trial court is reversed insofar as it modified the parties’ physical custodial schedule and modified the domiciliary parent’s authority by requiring the parties to mutually agree on a high school selection and ADD treatment and medication and |24by giving Jason Tinsley the right to select the tutor for the minor child. In addition, the trial court’s decision to deny Nicole Tins-ley’s request for injunctive relief is affirmed. All costs of this appeal are assessed to the plaintiff/appellee, Jason Lee Tinsley
REVERSED IN PART; AFFIRMED IN PART.

. Specifically, this judgment awarded Jason Tinsley physical custody of the child every other weekend from Friday after school until Sunday at 6:00 p.m., every Tuesday and Thursday afternoon from 6:00 p.m. until 8:00 p.m., for four weeks during the summer, during major holidays on an alternating yearly basis, and on Father’s day.

. Specifically, this judgment awarded Jason Tinsley physical custody of the child every other weekend from Friday after school until the following Monday morning before school, every other Wednesday after school until 8:00 p.m., on alternating weeks (50/50) during the summer, during major holidays on an alternating yearly basis, and on Father's day.

. Although the trial court's written reasons reflect that it denied the injunctive relief request by Nicole Tinsley with regard to photos of the child on social media, the March 15, 2016 judgment is silent with respect to this issue. Nevertheless, this issue is properly before us as silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is generally deemed a rejection of the claim and the relief sought is presumed to be denied. See Schoolhouse, Inc. v. Fanguy, 2010-2238 (La.App. 1st Cir. 6/10/11), 69 So.3d 658, 664.

. We recognize that in some instances, a child’s continued poor school performance over an extended period of time may constitute a change in circumstances affecting the welfare of the child. However, in this case, the only evidence offered with respect to the child's poor school performance was the child’s grades/report cards and this evidence fails to establish the reason for the child’s poor school performance, i.e., whether the child’s poor grades were attributable solely to Nicole Tinsley and whether a change of physical custody would improve the child’s educational performance. Notably, Jason Tinsley admitted that the child failed a test for which he helped the child study. Therefore, given the absence of evidence in the record with respect to the reason for the child’s continued poor school performance, we cannot say that the continuation of poor grades (since the rendi *416 tion of the February 21, 2013 judgment) was a change in circumstances affecting the welfare of the child.

. Because we have determined that the trial court erred in its finding, and that Jason Tinsley failed to prove, a material change in circumstances affecting the welfare of the child, we need not address the trial court’s subsequent finding that the modification proposed by Jason Tinsley was in the best interest of the child, or address any of Nicole Tinsley’s assignments of error with respect to those issues, i.e., whether the trial court applied the correct burden, whether the trial court failed to give proper weight to the preference of the child, whether the modification of custody was in the best interest of the child, and whether the trial court erred in excluding testimony of the court appointed counselor for the minor child with regard to the issue of custody.

. The Scarlet Letter by Nathaniel Hawthorne,