STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CU 0326

ALYSON MARY BABCOCK

VERSUS

CHARLES DAVID MARTIN

Judgment Rendered: **OCT 2 4 2019**

* * * * * * *

On Appeal from the 32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court Number 143,450

Honorable Randall L. Bethancourt, Judge Presiding

* * * * * * *

| | |
|---|---|
| J. Ogden Middleton, II<br>Alexandria, Louisiana | Attorney for Plaintiff/Appellant,<br>Alyson Mary Babcock |
| Gregory J. Schwab<br>Houma, Louisiana | Attorney for Defendant/Appellee,<br>Charles David Martin |
| Dixie C. Brown<br>Houma, Louisiana | Attorney for A.G.B. |

* * * * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

PENZATO, J.

Appellant, Alyson Mary Babcock, appeals a judgment denying her rule to modify custody. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The instant appeal is part of an ongoing child custody dispute with a long-standing factual and procedural background.[1] Ms. Babcock and Charles David Martin were never married, but had one child together, A.G.B.,[2] born on September 20, 2004. Pursuant to a consent judgment dated October 3, 2005, the parties were granted joint custody of A.G.B., with Ms. Babcock designated as the domiciliary parent. On December 8, 2005, Mr. Martin filed a rule seeking sole custody of A.G.B., alleging that Ms. Babcock incorrectly gave A.G.B. medications, exaggerated A.G.B.'s medical problems to a point where harm was caused to the child, and deceived Mr. Martin and the court as to A.G.B.'s medical condition. The matter came before the court on several occasions, and ultimately on April 10, 2008, the parties agreed and consented to enter into mental health counseling utilizing Jeanne Robertson, Ph.D, LPC.

At her initial meeting with Ms. Babcock on June 10, 2008, Dr. Robertson developed concerns that Ms. Babcock might suffer from Munchausen Syndrome by Proxy (MSbP)[3] because Ms. Babcock's description of A.G.B.'s health problems, medication needed, and dietary regimen appeared to conflict with the collateral documents received. In connection with a status hearing scheduled for

---

[1] The parties previously appeared before this court litigating an order of protection issued against Ms. Babcock by the trial court in May of 2011, See *Babcock v. Martin*, 2012-0148 (La. App. 1 Cir. 12/31/12), 2012 WL 6758034 (unpublished) ("*Babcock I*"), and again in connection with the rule to modify custody that is the subject of the instant appeal. See *Babcock v. Martin*, 2016-0073 (La. App. 1 Cir. 9/16/16), 2016 WL 4973229 (unpublished) ("*Babcock II*").

[2] Although referred to as A.G.M. in the prior opinions, the minor child's name has been legally changed to A.G.B.

[3] MSbP is a mental illness in which a caregiver, usually a mother, intentionally produces or feigns illness or injury in a person under her care in order to assume the role of a parent who is suffering the hardship of having a sick child. See *Babcock II*, *1 n.3.

2

August 12, 2008, Dr. Robertson advised the trial court by letter of her concerns regarding the number of different doctors from whom Ms. Babcock sought medical treatment for A.G.B. Dr. Robertson further advised the trial court that Ms. Babcock stated that on A.G.B.'s chart at one doctor's office it had been suggested that she suffered from MSbP. Dr. Robertson indicated that she was not trained to determine if Ms. Babcock suffered from MSbP, and she believed it was essential that Ms. Babcock receive a complete psychological evaluation by Michael Chafetz, Ph.D., APBB.

On August 20, 2008, Mr. Martin filed a second rule for sole custody, asserting that Ms. Babcock refused to undergo an immediate psychological evaluation by Dr. Chafetz. He also sought an ex-parte order of provisional custody, alleging that he feared for A.G.B.'s safety and welfare. The trial court granted Mr. Martin provisional custody of A.G.B., with no visitation by Ms. Babcock pending the hearing of the matter "due to the gravity of the circumstances."

On August 29, 2008, and September 17, 2008, Dr. Chafetz conducted a psychological evaluation of Ms. Babcock, and on September 7, 2008, issued a report wherein he concluded that Ms. Babcock suffered from MSbP and should only have supervised visitation with A.G.B. After receiving Dr. Chafetz's completed report, Dr. Robertson provided an evaluation to the trial court dated September 28, 2008.

On October 2, 2008, the matter came before the trial court for hearing. Both Dr. Chafetz's and Dr. Robertson's reports were made part of the record without objection. The parties entered into an agreement that was reduced to judgment signed December 1, 2008, granting Mr. Martin sole legal and physical custody of A.G.B. The consent judgment further decreed that Ms. Babcock was to have supervised visitation of A.G.B. upon complying with the following conditions: (1)

3

Ms. Babcock shall begin and maintain active therapy with a psychologist or psychiatrist who understands the disorders identified in Dr. Chafetz's report; (2) the mental health professional shall be approved by the trial court and report on a monthly basis to the trial court; (3) Ms. Babcock's visitation shall be supervised by a registered nurse who is acceptable to the trial court and to the parties; and (4) the trial court shall set the frequency and times of the visitation periods upon compliance with the conditions and recommendations of A.G.B.'s therapist and Ms. Babcock's therapist.

Ms. Babcock did not appeal the December 1, 2008 judgment. On July 27, 2009, Ms. Babcock filed a rule seeking the appointment of James R. "Randy" Logan, Ph.D., as the court-appointed psychologist to provide the therapy required in the December 1, 2008 judgment. In connection therewith, Dr. Logan testified before the trial court on October 21, 2009 as to his competency to provide treatment. However, the hearing was not completed at that time, and was continued.

Prior to the trial court's ruling on Dr. Logan's appointment as Ms. Babcock's treating psychologist, Ms. Babcock began therapy with Dr. Logan. On June 19, 2010, Dr. Logan advised the trial court by letter that after meeting with Ms. Babcock on six occasions, he was convinced that the diagnosis of MSbP must be called into question. In his opinion, the methodology used by Dr. Chafetz was inadequate and incomplete, and the data presented in Dr. Chafetz's report was inconsistent with MSbP. Dr. Logan opined that a more likely explanation was that immediately after birth A.G.B. presented with multiple life-threatening medical challenges that would likely overwhelm any parent; in the face of such complex medical issues, it was probable that Ms. Babcock's response to medical instructions was less than optimal; and as a further exacerbating variable the above issues occurred in the context of a high-conflict, intensely adversarial custody

4

dispute. Dr. Logan advised that the primary focus of his work with Ms. Babcock was preparing her for resumption of contact with A.G.B.

Ms. Babcock's rule to appoint psychologist was re-set for hearing on February 1, 2011. The trial court denied the appointment of Dr. Logan as treating psychologist, indicating Dr. Logan's disagreement with Dr. Chafetz's diagnosis. In a judgment signed May 23, 2011, the trial court ordered that the Department of Psychiatry at the LSU Health Science Services in Shreveport, Louisiana, (LSU-S) be approved and appointed as Ms. Babcock's treating therapist in conformity with the December 1, 2008 consent judgment. The trial court further ordered that counsel for Ms. Babcock would endeavor to make an appointment for Ms. Babcock with LSU-S, seek to procure the names of professional treating psychiatrists, and provide such names to counsel for Mr. Martin. Ms. Babcock did not appeal this judgment.

Following a significant period of dormancy in the proceedings, on January 14, 2015, Ms. Babcock filed a "Rule to Enforce Monetary Relief and Modify Judgment." In relevant part, Ms. Babcock requested the trial court modify the custody and psychiatric care provisions of the December 1, 2008 consent judgment and May 23, 2011 order on her rule to appoint a treating psychiatrist, so as to provide her with greater access to her minor child. Ms. Babcock claimed that it was in the best interests of A.G.B. for the consent judgment to be vacated. She further requested that the trial court revise the order on her rule to appoint a treating psychiatrist, arguing that LSU-S did not have expert psychiatric doctors or psychologists on its staff capable of providing therapy for MSbP.

Mr. Martin responded to Ms. Babcock's rule seeking modification of the trial court's prior judgments by filing dilatory exceptions of prematurity and improper use of summary procedure, declinatory exceptions of lis pendens and lack of subject matter jurisdiction, and peremptory exceptions of res judicata and

no cause of action. These several exceptions came for a hearing before the trial court on July 8, 2015. The trial court signed a judgment denying the exceptions of improper use of summary proceedings, lis pendens, lack of subject matter jurisdiction, and res judicata on October 26, 2015.[4] However, the trial court granted the dilatory exception of prematurity, reasoning that Ms. Babcock "has not yet begun to meet the court-ordered conditions for her to reclaim visitation rights." *Babcock II*, *2-4.

Ms. Babcock appealed that decision, and in *Babcock II*, we converted the appeal to an application for supervisory writ, reversed the judgment granting the dilatory exception of prematurity, and remanded the case. Thereafter, following a twelve-day trial, the trial court denied Ms. Babcock's "Rule to Enforce Monetary Relief and Modify Judgment" and her request to name Dr. Logan as her court-appointed therapist by judgment signed December 18, 2018, offering extensive reasons in support of its ruling. The trial court concluded that Ms. Babcock did not carry her burden of proof to warrant a custody modification, or even to resume communications with A.G.B., stating as follows:

> The central focus of the trial testimony was on the mother,[Ms. Babcock]. She was diagnosed with [MSbP], which she denounces. [Ms. Babcock] was ordered to receive therapeutic treatment for [MSbP] as one of several conditions for communication to resume and supervised visitation to begin; she has not done so. Although she saw Dr. Logan 34 times in 8 years (through May 19[th] of 2018) and asks the court to appoint him as her approved therapist, he denounces the [MSbP] diagnosis, has yet to provide even one minute of counseling or therapy for [MSbP]. He firmly believes that [Ms. Babcock] has been unjustly vilified. Most importantly, [Ms. Babcock] has not offered any evidence that the proposed modification would serve the child's best interest. The only witness with any degree of knowledge of how the child would be impacted if [Ms. Babcock]'s request is granted is Dr. Zoe Tanner. She testified that it is not in the child's best interest at this time.

---

[4] The trial court pretermitted consideration of the peremptory exception of no cause of action. In addition, the trial court denied as moot the declinatory exception of lis pendens, which pertained to an unsatisfied money judgment not at issue in this appeal, because counsel for Ms. Babcock acknowledged that the money judgment was satisfied and all sums due were paid.

Ms. Babcock appeals the December 18, 2018 judgment, challenging the methodology used by Dr. Chafetz in reaching the MSbP diagnosis, and alleging that the trial court erred by failing to apply La. C.C. art. 134 as amended.[5]

## LAW AND DISCUSSION

In cases such as the instant case, where the underlying custody decree is a stipulated judgment, a party seeking a modification must prove that: (1) there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered; and (2) the proposed modification is in the best interest of the child. *Tinsley v. Tinsley*, 2016-0891 (La. App. 1 Cir. 1/18/17), 211 So. 3d 405, 412. Thus, the burden of proof to change the December 1, 2008 consent judgment fell on Ms. Babcock to show that there had been a material change in circumstances affecting the welfare of A.G.B. since the December 1, 2008 consent judgment was entered, and that the proposed modification was in the best interest of the child.

Each child custody case must be viewed in light of its own particular set of facts and circumstances. *Gill v. Dufrene*, 97-0777 (La. App. 1 Cir. 12/29/97), 706 So. 2d 518, 521. The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 738.

A trial court's determination of a child's best interests is usually based heavily on factual findings. *Henry v. Henry*, 2008-0689 (La. App. 1 Cir. 9/23/08), 995 So. 2d 643, 645. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial

---

[5] Ms. Babcock listed twelve assignments of error in her brief. However, she only briefed the assignments of error that challenge the MSbP diagnosis and the assignment of error alleging that the trial court failed to apply the current version of La. C.C. art. 134. The court may consider as abandoned any assignment of error or issue for review which has not been briefed. Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(4). See also *Louisiana Commerce & Trade Ass'n, SIF v. Williams*, 2014-1680 (La. App. 1 Cir. 6/5/15), 174 So. 3d 696, 699. Accordingly, the remaining assignments of error are deemed abandoned.

7

court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. *Major v. Major*, 2002-2131 (La. App. 1 Cir. 2/14/03), 849 So. 2d 547, 550.

It is well settled that an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). When a fact finder is presented with two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* at 883. Additionally, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell*, 549 So.2d at 844.

Further, the trial court is not required to give any extra credence to the testimony of experts. *Givens v. Givens*, 2010-0680 (La. App. 1 Cir. 12/22/10), 53 So. 3d 720, 729. It is well settled in Louisiana that the fact finder is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. *Id.* The fact finder may accept or reject in whole or in part the opinion expressed by an expert. *Id.* The effect and weight to be given expert testimony is within the trial court's broad discretion. *Morgan v. State Farm Fire & Cas. Co.*, 2007-0334 (La. App. 1 Cir. 11/2/07), 978 So. 2d 941, 946.

As the trial court recognized, the central focus of the trial was the 2008 MSbP diagnosis. Through the testimony of Dr. Logan and Alicia Pellegrin, Ph.D., LPC, Ms. Babcock attacked the methodology used by Dr. Chafetz. In this appeal, Ms. Babcock argues that the trial court failed to fulfill its obligation under La. C.E. art. 702[6] as a gatekeeper, by admitting and relying upon Dr. Chafetz's MSbP diagnosis in the absence of proof that he employed the reliable methodology required by La. C.E. art. 702. Ms. Babcock further contends that Dr. Chafetz's methodology of using test results and symptoms validity testing does not survive a *Daubert/Foret/Cheairs*[7] analysis.

Dr. Chafetz testified at length regarding his diagnosis of Ms. Babcock. In addition to evaluating her, he interviewed Mr. Martin and his wife, Leslie; observed and spoke with A.G.B; spoke with A.G.B.'s current and previous pediatricians; and reviewed medical records provided to him. Dr. Chafetz noted that A.G.B. had a very large medical record; his examination of the record revealed that Ms. Babcock took A.G.B. to the hospital or doctor "at the drop of a hat," and the findings usually did not substantiate the claims.

---

[6] Louisiana Code of Evidence art. 702 provides in pertinent part that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

[7] In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court set forth a means for determining the reliability of expert scientific testimony. The Louisiana Supreme Court adopted the test set forth in *Daubert* in *State v. Foret*, 628 So.2d 1116 (La. 1993), and further specified the admissibility of expert testimony in *Cheairs v. DOTD*, 2003-0680 (La. 12/3/03), 861 So.2d 536.

Dr. Chafetz testified that in his report he listed the kinds of non-credible behaviors exhibited by Ms. Babcock that could be involved in a factitious disorder, "painting a picture of the kinds of things [he]was thinking about." He did not automatically assume that this was a factitious disorder case and if the results concerning illness deception had gone another way, he would have been obliged not to diagnose this as such. Dr. Chafetz testified that he utilized validity testing in reaching his conclusion. He administered to Ms. Babcock a number of psychological tests, including the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). According to Dr. Chafetz, Ms. Babcock's MMPI-2 revealed elevated levels on the "L scale," which was reflective of deception. He also noted an elevation of the "faking good index" of the Child Abuse Potential Inventory, which he also administered to Ms. Babcock. According to Dr. Chafetz, taken together these results made it clear that there was an attempt by Ms. Babcock to portray herself and A.G.B. as having certain kinds of problems or illnesses, while at the same time attempting to portray herself as being free from any kind of psychological distress or psychological pathology. Dr. Chafetz testified that he also administered to Ms. Babcock the Structured Inventory of Malingered Symptomology, and that based upon the findings on all of the administered tests, he concluded that there was an almost 84% probability that Ms. Babcock was feigning, or engaging in illness deception. He further testified that in connection with the other findings in the case, including interviewing doctors and reviewing the various medical records, the positive findings on the tests he administered led to his diagnosis.

At trial, Dr. Logan testified that at the time of Dr. Chafetz's evaluation, the MSbP diagnosis was contained in an appendix to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition ("DSM-IV") and is now included in the DSM-V. According to Dr. Logan, the DSM-V requires objective data for a

diagnosis of MSbP and he did not observe the kind of robust evidence necessary for the diagnosis in Dr. Chafetz's report. A finding that A.G.B. had a large medical file and was taken to the doctor frequently is insufficient for such a diagnosis. In Dr. Logan's opinion, Dr. Chafetz misinterpreted the results of the tests he administered to Ms. Babcock to conclude she was malingering; Dr. Logan believed the more parsimonious explanation is that Ms. Babcock was nervous and scared. Dr. Logan concluded that his review of Dr. Chafetz's work did not support the findings of a diagnosis of MSbP.

Dr. Pellegrin was retained on behalf of and evaluated Ms. Babcock, and issued a report dated December 22, 2013, concluding therein that there was insufficient evidence to conclude that Ms. Babcock suffers from MSbP. At trial, Dr. Pellegrin testified that it is extremely difficult to diagnose a disorder as rare as MSbP. According to Dr. Pellegrin, the diagnosis requires intentional conduct on the part of the person being diagnosed; it is very hard to ascertain the presence of a motivation to deceive and a deliberate intention to falsify a health situation, health information, or diagnostic indicators. In her trial testimony, Dr. Pellegrin criticized the methodology used by Dr. Chafetz, stating that it was not in harmony with her peers in the realm of forensic custody evaluations. According to Dr. Pellegrin, Dr. Chafetz's expertise is with Social Security cases, and his methodology is perhaps in harmony with determining whether someone is malingering for financial gain. Dr. Pellegrin testified that she has never seen the methodology employed by Dr. Chafetz used or even discussed in terms of rendering a diagnosis of a factitious disorder. According to Dr. Pellegrin, there is no evidence that anyone other than Dr. Chafetz believes that his is an appropriate methodology to diagnose MSbP.

Following the testimony of Dr. Logan and Dr. Pellegrin, Dr. Chafetz responded, testifying that their criticisms of him were false and not based upon psychological science. He indicated that Dr. Pellegrin was clearly not an expert in

11

the area, as she conflated positive findings on validity testing with malingering and incorrectly asserted that malingerers do not show elevations on scales of positive impression management. According to Dr. Chafetz, Dr. Pellegrin is apparently confused about the purposes and potential findings of validity testing. With regard to Dr. Logan, he recognized that as her therapist, Dr. Logan needs to be an advocate for Ms. Babcock. However, he cautioned against confusing therapeutic advocacy with science and noted that Dr. Logan provided no evidence that he was able to evaluate the methodology used by Dr. Chafetz. Dr. Chafetz concluded that, "[I]n [his] opinion, it would be less important for any therapist to opine about whether Ms. Babcock meets criteria for any disorder, and instead very important to provide the Court with evaluative evidence of her progress with parenting skills, clean boundaries, and appropriate interactions with the medical profession."

Both Dr. Logan's and Dr. Pellegrin's testimony at trial focused on the methodology used by Dr. Chafetz in reaching the conclusion contained in his September 7, 2008 report. Significantly, Ms. Babcock did not challenge Dr. Chafetz's methodology or request a *Daubert* hearing at the October 2, 2008 hearing on Mr. Martin's rule for sole custody, and Dr. Chafetz's report was introduced into evidence without objection.

The factual basis for an expert opinion determines the credibility of the testimony. It is the responsibility of the opposing party to explore the factual basis for the opinion and thus, determine its reliability. *Leard v. Schenker*, 2006-1116 (La. 6/16/06), 931 So. 2d 355, 357. Thus, the failure to raise an objection to the admissibility and reliability of expert testimony constitutes a waiver of such an objection. La. C.E. art. 103(A)(1); *Harris v. State, Dept. of Transp. & Dev.*, 2007-1566 (La. App. 1 Cir. 11/10/08), 997 So. 2d 849, 868, writ denied, 2008-2886 (La. 2/6/09), 999 So. 2d 785. A contemporaneous objection to the disputed evidence must be entered on the trial record in order to preserve the objection for appellate

12

review. Furthermore, when the objecting party fails to request an evidentiary "gatekeeping" hearing, his objections to the admissibility of an expert witness's testimony under *Daubert* are not preserved for appeal. *Id.*

Ms. Babcock waived her objection concerning the admissibility and reliability of Dr. Chafetz's testimony when she failed to raise it at the October 2, 2008 hearing. See *Leard*, 931 So. 2d at 357. Any objection to Dr. Chafetz's methodology could not have formed the basis for an attack had Ms. Babcock appealed the December 1, 2008 consent judgment. See *Id.* Likewise, it cannot form the basis of this appeal of the trial court's December 18, 2018 judgment.

Moreover, Dr. Chafetz explained the methodology he used in reaching his diagnosis and addressed the challenges to his methodology raised by Drs. Logan and Pellegrin. The effect and weight to be given expert testimony is within the broad discretion of the trial judge. *Morgan*, 978 So. 2d at 946. We do not find the trial court abused its discretion in recognizing Ms. Babcock's agreement, as embodied in the December 1, 2008 consent judgment, that she would have supervised visitation of A.G.B. only upon beginning and maintaining active therapy with a psychologist or psychiatrist who understands the disorders identified in Dr. Chafetz's September 7, 2008 report.

In addition, as noted above, to alter the December 1, 2008 consent judgment, Ms. Babcock had the burden of proving that there had been a material change in circumstances affecting the welfare of A.G.B. since the December 1, 2008 consent judgment was entered, and that the proposed modification was in the best interest of the child. She failed to identify any change in circumstances. Neither Dr. Logan nor Dr. Pellegrin testified regarding any change since 2008. Further, Ms. Babcock failed to produce any evidence that the proposed modification–greater access to A.G.B.–was in AG.B.'s best interest. As the trial court noted, the only evidence regarding the effect of Ms. Babcock having greater access to A.G.B. was

13

offered by A.G.B's therapist, Dr. Tanner. Dr. Tanner testified that in recent sessions, A.G.B. has become anxious and afraid in response to the idea that supervised visitation may resume. Dr. Tanner testified that access to Ms. Babcock even for short windows of time would be damaging to A.G.B., and that in her opinion Ms. Babcock should not be allowed to see A.G.B. at this time. Finally, we note that Ms. Babcock failed to prove that the trial court erred in failing to apply the recently amended version of La. C.C. art. 134.

Thus, after reviewing the testimony and evidence presented at trial, we do not find the trial court erred in denying Ms. Babcock's rule to modify custody.

## CONCLUSION

For the above and foregoing reasons, the December 18, 2018 judgment is affirmed. Costs of this appeal are assessed to Alyson Mary Babcock.

**AFFIRMED.**

14