NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2026 CU 0079

LAUREN WALLACE

VERSUS

AARON CARBO

*Judgment Rendered:*  JUN 18 2026

* * * * * * * *

Appealed from the
Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F235945, Division A

The Honorable Pamela J. Baker, Judge Presiding

* * * * * * * *

Janeane G. Abbott
Jennifer G. Prescott
Nicholas Z. Abbott
Prairieville, Louisiana

Counsel for Defendant/Appellant
Aaron Carbo

Brian J. Prendergast
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee
Lauren Wallace

* * * * * * * *

BEFORE: THERIOT, BALFOUR, AND HAGGERTY,[1] JJ.

---

[1] Honorable Bryan D. Haggerty is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**THERIOT, J.**

In this case, a father appeals a trial court judgment awarding joint custody of the minor child to the parties, designating the mother as the domiciliary parent, and providing relative to physical custody of the child. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

The parties to this custody proceeding, Lauren Wallace and Aaron Carbo, were never married but are the parents of a daughter born in 2018. Ms. Wallace and Mr. Carbo ended their relationship when their daughter was approximately a year old. Following the end of the parties' romantic relationship and cohabitation, they did not enter into a formal custody agreement, but they cooperated in coparenting their daughter for several years. The child lived with Ms. Wallace, and Ms. Wallace was undisputedly the child's primary caregiver for the first six years of her life. Nevertheless, Ms. Wallace communicated with Mr. Carbo regularly about the child and attempted to accommodate his requests to spend time with their daughter when his schedule allowed. Ms. Wallace made sure the child called Mr. Carbo daily, and he saw the child intermittently, but he did not have a bedroom for the child in his home until shortly before these proceedings began.

In August of 2023, Mr. Carbo entered into a new relationship with a woman named Rockel, and Rockel moved in with him in January of 2024. In early 2024, he began requesting to spend more time with the child and involving Rockel in his communications with Ms. Wallace concerning the child. Mr. Carbo initially told Ms. Wallace in January of 2024 that Rockel was his roommate; however, when Ms. Wallace questioned Rockel's involvement in their discussions concerning their daughter, Mr. Carbo informed her that Rockel was actually his girlfriend. Mr. Carbo and Rockel were married in "late June, early July" of 2024, but he

2

admittedly began delegating decision-making regarding the child to Rockel prior to their marriage.

Although Mr. Carbo had been making voluntary financial contributions of approximately $250 a month to the child's care for several years, at Rockel's suggestion, he began conditioning his financial support for the child on Ms. Wallace's agreement to his custody demands. Mr. Carbo stopped making voluntary payments around March of 2024 when Ms. Wallace would not agree to sign a custody agreement prepared by Rockel, which provided for equal custodial periods and no child support.

On April 5, 2024, Ms. Wallace filed the instant custody proceeding. Pertinent to this appeal, Ms. Wallace's petition requested that the court award joint custody of the child to the parties, designate Ms. Wallace as the domiciliary parent, and grant reasonable physical custodial periods to Mr. Carbo. Mr. Carbo filed a reconventional demand, asking the court to establish a physical custody schedule with the parties sharing time with the minor child equally on a week-to-week basis. Mr. Carbo also requested that no domiciliary parent be designated or, in the alternative, that he be designated as the domiciliary parent.

The parties entered into a stipulated judgment on June 18, 2024, pursuant to which they were granted joint custody of the child, Ms. Wallace was designated as the interim domiciliary parent, and Mr. Carbo was granted interim custodial periods on alternating weekends, plus additional time during the summer.

A trial was held on November 7, 2024 and December 16, 2024. Thereafter, the court signed a judgment on March 18, 2025, awarding joint custody of the child to Ms. Wallace and Mr. Carbo and designating Ms. Wallace as the domiciliary parent. The judgment further ordered that the child shall reside with Ms. Wallace at all times, except that during the school year, Mr. Carbo shall have physical custody of the child on alternating weekends, and during the summer

3

break, Mr. Carbo shall have physical custody of the child on alternating weeks. The judgment also provided for holiday custodial periods and other incidental matters.

Mr. Carbo appealed, arguing that the trial court erred in allocating physical custody by misapplying the factors set forth in La. C.C. art. 134 for determining the best interest of the child and disregarding the feasibility of equal shared custody.

## STANDARD OF REVIEW

The best interest of the child is the guiding principle in all custody litigation. See La. C.C. arts. 131 and 134. Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. See La. C.C. art. 131; *Leger v. Leger*, 2022-1113, p. 13 (La.App. 1 Cir. 3/13/23), 363 So.3d 519, 528, *writ denied*, 2023-00512 (La. 6/26/23), 363 So.3d 1231. The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. *Leger*, 2022-1113 at p. 13, 363 So.3d at 528.

## DISCUSSION

When parents share joint custody of a child, La. R.S. 9:335(A) requires an implementation order to be rendered (except for good cause shown), which allocates each party's physical custodial time periods, as well as the legal authority and responsibility of the parents. *Givens v. Givens*, 2010-0680, p. 9 (La.App. 1 Cir. 12/22/10), 53 So.3d 720, 728. To the extent it is feasible and in the best interest of the child, physical custody of the child shall be shared equally. La. R.S. 9:335(A)(2)(b); *Bernard v. Bernard*, 2020-0973, p. 7 (La.App. 1 Cir. 2/19/21), 321 So.3d 396, 400. However, the law does not mandate equal sharing, and the trial

4

court is imbued with much discretion in the determination of what constitutes physical custody or feasible, reasonable visitation. The paramount consideration is always the best interest of the child. *Bernard*, 2020-0973 at p. 7, 321 So.3d at 400. Because of the trial court's mandate and great discretion for considering the best interest of the child, joint custody does not mean a fifty-fifty sharing of time on the strength of feasibility alone. *Bernard*, 2020-0973 at p. 7, 321 So.3d at 400.

In *Stephens v. Stephens*, 2002-0402, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 777, this court stated:

> [O]nce a joint custody arrangement has been decreed, the court shall, except for good cause shown, render a joint custody implementation order allocating the time that each parent is to have physical custody of the minor child. Enough time should be given so that each parent is assured they will be in "frequent and continuing contact" with the child. However, only if it is both feasible and in the best interest of the child, should the court consider granting equal physical custody to the parents. The "best interest of the child" inquiry is the dominant consideration in any custody determination and cannot be "balanced" against any other right or privilege.

Mr. Carbo argues on appeal that the trial court abused its discretion in allocating physical custody since he possesses the practical ability and capacity to exercise equal shared physical custody of the minor child. Mr. Carbo asserts that the trial court disregarded the feasibility of equal shared custody when allocating physical custody. Although Mr. Carbo was adamant that a fifty-fifty custody schedule was feasible, the testimony presented at trial revealed that Mr. Carbo lives in Gonzales, while Ms. Wallace lives in Baton Rouge and the child attends school in Baton Rouge. In addition, Mr. Carbo's employment as a jiu jitsu instructor and wrestling coach results in him working during the times that the child is not in school (during the afternoons and evenings on weekdays and at various times on the weekends). However, as previously noted, the feasibility of a fifty-fifty sharing of time is not the deciding factor in allocating physical custody;

5

the trial court must also conclude that such a custody arrangement is in the child's best interest.

Louisiana Civil Code article 134(A) provides the following non-exclusive list of factors that the trial court shall consider, along with any other relevant factors, in determining the best interest of the child:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The list of factors provided in Article 134 is non-exclusive, and the weight to be given each factor is left to the discretion of the trial court. *Hodges v. Hodges*, 2015-0585, p. 4 (La. 11/23/15), 181 So.3d 700, 703. In making its determination, the trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in Article 134, nor is the trial court required to specifically explain its weighing and balancing of the Article 134 factors. Rather, the trial court should decide each case on its own facts and circumstances in light of Article 134 and all other relevant factors. *Leger*, 2022-1113 at p. 14, 363 So.3d at 529.

Additionally, in most child custody cases, the trial court's determination is based heavily on factual findings. *Yepez v. Yepez*, 2021-0477, p. 8 (La.App. 1 Cir. 12/22/21), 340 So.3d 36, 41. It is well-settled that an appellate court cannot set aside the trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. See *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). When presented with two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State through Department of Transportation and Development*, 617 So.2d 880, 883 (La. 1993). Furthermore, it is well-settled that where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed by a reviewing court. *Leger*, 2022-1113 at p. 15, 363 So.3d at 529. If documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible that a reasonable fact finder would not credit it, the reviewing court may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. But in the absence of such factors, where the

7

finding is based on the trial court's decision to credit the testimony of one party over the other, the finding can virtually never be manifestly erroneous or clearly wrong. *Rosell*, 549 So.2d at 844-45. One court has observed:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in La. C.C. art. 134.

*Fuller v. Fuller*, 54,098, pp. 19-20 (La.App. 2 Cir. 7/21/21), 324 So.3d 1103, 1114, *writ denied*, 2021-01223 (La. 9/27/21), 324 So.3d 621.

Mr. Carbo argues on appeal that "[t]he [t]rial [c]ourt, in its application of the La. C.C. art. 134 factors, improperly weighed the evidence, resulting in a custodial determination that is not reasonably supported by the record." Specifically, Mr. Carbo complains that the trial court erred in its consideration of his moral fitness (factor 7) and history of substance abuse (factor 8), where the alleged immoral conduct did not adversely affect the child and where the record reflects "no established pattern of substance abuse, no evidence of impairment while exercising custody, and no testimony demonstrating that the child's safety or welfare was ever compromised under [his] watch." Mr. Carbo further avers that the trial court abused its discretion in allocating physical custody since "[t]he record reflects two fit and capable parents who reside in close proximity and whose work schedules permit the practical implementation of an equal shared custody arrangement."

As previously noted, the weight to be given each factor is left to the discretion of the trial court. *Leger*, 2022-1113 at p. 14, 363 So.3d at 529. Here, the trial court explained its analysis of several relevant Article 134 factors in its oral reasons for judgment, noting that the other factors were "fairly equal." Regarding factor 5, "[t]he length of time the child has lived in a stable, adequate

environment, and the desirability of maintaining continuity of that environment[,]" the trial court found that "[t]he child has lived primarily with [Ms. Wallace], and Mr. Carbo did not even have a room set up for his daughter until this year." With regard to factor 7, "[t]he moral fitness of each party, [insofar] as it affects the welfare of the child[,]" the trial court noted: "Mr. Carbo is a marijuana smoker, and up until just recently, he spent a lot of money on OnlyFans, which is not exactly a good example for a minor daughter." The trial court also found that factor 8, the history of substance abuse, weighed against Mr. Carbo, noting that Mr. Carbo was the only parent who failed a court-ordered drug test. Finally, the trial court found that factor 14, "[t]he responsibility for the care and rearing of the child previously exercised by each party[,]" also weighed in favor of Ms. Wallace, explaining: "The court believes the primary responsibility in that regard has been with Ms. Wallace. Mr. Carbo was free at any time during this child's life to come in and file a request for custody. None of that started happening until he married his – or got together with his current wife."

As previously noted, the trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case. See *Leger*, 2022-1113 at p. 13, 363 So.3d at 528. It is clear that the trial court did not consider equal shared custody to be in the child's best interest. Based upon our thorough review of the record and the unique circumstances of this case, we cannot say that the trial court abused its discretion in awarding joint custody to the parties and instituting a physical custody schedule that did not provide equal custodial time to the parties, regardless of the feasibility of such an arrangement.

## CONCLUSION

For the reasons set forth herein, the March 18, 2025 judgment is affirmed. Costs of this appeal are assessed to appellant, Aaron Carbo.

**AFFIRMED.**